bicycle, and to ship it to the plaintiff on or before the 14th of July. It violated that agreement, and for such a violation the defendant was liable for the damages sustained by the plaintiff.

It is not necessary to determine upon this appeal the measure of damage to which the plaintiff was entitled. There was clearly a valid contract made by a person assuming to represent the defendant, in charge of its place of business, which was ratified by the defendant, and for a breach of that contract the defendant was liable.

It follows that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON and HATCH, JJ., concur.

McLAUGHLIN, J. (dissenting). I concur in the opinion of Mr. Justice INGRAHAM in so far as he holds that there was sufficient evidence to go to the jury upon the question of a breach of the contract alleged in the complaint, but upon the record before us the jury would only have been justified in rendering a verdict for nominal damages. The only evidence bearing upon the question of damages is that the plaintiff, upon defendant's failure to deliver the bicycle when repaired at Portland, purchased a new bicycle, for which he paid $79. The cost of the new bicycle, manifestly, is not the proper measure of damages for a breach of the contract, and a verdict for that amount, based upon such evidence, could not be permitted to stand. If it could, then the plaintiff would have the new wheel and his old one by simply paying the cost of the repairs. But, even though the plaintiff was entitled to recover nominal damages, this does not justify us in reversing the judgment in favor of the defendant and ordering a new trial. As was said in Rambaut v. Irving National Bank, 42 App. Div. 147, 58 N. Y. Supp. 1058:

"Unless some substantial right beyond damages is involved, the court will not reverse a judgment against the plaintiff simply for the purpose of enabling him to obtain nominal damages, when it is quite clear from the case presented that he would be entitled to no more."

The general rule is that a judgment will not be reversed for the sole purpose of enabling the plaintiff to recover nominal damages. Stephens v. Wider, 32 N. Y. 351; Throckmorton v. Evening Post, 35 App. Div. 396, 54 N. Y. Supp. 887; Hartmann v. Burtis, 65 App. Div. 481, 72 N. Y. Supp. 914.

I think the judgment appealed from should be affirmed, with costs.

LAUGHLIN, J., concurs.

---

PEOPLE ex rel. CLAPP v. LISTMAN, City Com'r.

(Supreme Court, Appellate Division, Fourth Department. May 12, 1903.)

1. MANDAMUS—CHIEF OF POLICE—ENFORCEMENT OF SUNDAY LAW—DISCRETIONARY CHARACTER OF WRIT.

Where the executive head of a municipal police department has sent an officer to attend a Sunday theatrical performance, who reports to the police magistrate, who in turn refuses to issue a warrant, and where both the Sunday violator may be proceeded against criminally and the

head of the department ousted from office for official dereliction, the court, in the exercise of its discretion, will refuse mandamus to compel such officer to enforce the Sunday laws; neither the wrong complained of being of so grave a character, nor the public interests involved of such importance, as to warrant extraordinary interference with the details of municipal administration.

Appeal from Special Term, Onondaga County.

Application for a peremptory writ of mandamus by the people, on the relation of T. Eaton Clapp, against Charles Listman, as commissioner of public safety of the city of Syracuse. From a refusal of the application by the Special Term, relator appeals. Affirmed.

The following is the opinion of the Special Term (Andrews, J.):

The papers upon which the relator makes this application show that the defendant is commissioner of public safety of the city of Syracuse, and as such is the executive head of the police department of that city. It is his duty to see to it that the laws of the state are enforced within the limits of his territorial jurisdiction. They further show that there are within the city of Syracuse certain public theaters in which there have been given on Sunday evenings so-called "sacred concerts," to which admission has been charged, and that these concerts have necessitated the employment upon that day of labor. These concerts are not sacred in any sense. In reality they are dramatic performances, and constitute public exercises and shows, within the meaning of the statute. They are, therefore, prohibited by the Penal Code. Nevertheless it is the intention of their managers to continue them in the future. The attention of the defendant was called to them by a formal written complaint, and a demand was made that he use his power as head of the police department to put an end to them. He then caused two officers to attend a concert at the Bastable Theater on Sunday evening, January 11th. Upon their report the matter was presented on Monday morning to the police justice of the city of Syracuse, who refused to issue any warrants for the arrest of the persons responsible for such concert, on the ground that the same did not constitute a violation of law. As the alleged offense was a misdemeanor, the commissioner, in the absence of a warrant, had no power to cause any arrests to be then made, and he stated that he could not and would not do more than had already been done. Upon these facts the relator makes this application, his object being practically to obtain a mandamus from this court which should require the defendant to attend personally or to cause his officers to attend such concerts as may be given in the future, and to arrest or to cause the arrest, without a warrant, of persons holding such concerts, if the same shall be found to offend against the provisions of the Penal Code. The answering affidavits of the defendant dispute none of these facts, but do state that he is and has been ready to enforce the laws of the state. This claim, however, seems inconsistent with the admissions of his counsel, made on the argument of this motion, that these so-called concerts are illegal. If they are, it is plainly his duty to act. In view of this admission, and in view of the facts alleged and not denied in the papers before me, I shall, for the purposes of this decision, assume that the acts complained of are prohibited by the Penal Code. I shall also assume, without expressly so holding, however, that it is sought to compel a purely ministerial act on the part of the commissioner. It may be well to determine in the first instance what other means may be employed by the relator to compel the enforcement of the criminal laws of the state in relation to the observance of Sunday. It is open to him to make a complaint before the grand jury. He may lay an information before the police justice of the city of Syracuse, and, if that justice is satisfied that the crime complained of has been committed, and there is reasonable ground to believe that the defendant has committed it, he must issue a warrant of arrest. Code Cr. Proc. § 150. If the police justice willfully and improperly refuses to do his duty in the matter, he may be removed by the Appellate Division of the Supreme Court. Const. art. 6, § 17; Code Cr. Proc. § 132. The in-

formation may be laid not only before a police justice, but before any justice of the Supreme Court, the county judge, or the mayor of the city. Code Cr. Proc. § 147. If the crime is committed in the presence of the relator, he may himself arrest the criminal, and take him before a magistrate, or deliver him to a peace officer. Id. §§ 183, 185. If the alleged crime is committed in the presence of a policeman, he may arrest, without a warrant, the person so committing it (Id. § 177), and it is his duty to do so, and to take him before the proper city magistrate, to be dealt with in the same manner as if such person had been arrested upon a warrant theretofore duly issued by such magistrate (Charter Cities Second Class, § 181, Heydecker's Gen. Laws, p. 4614, c. 22). If such policeman fails to do his duty, a written charge may be made against him, and it then becomes the duty of the police commissioner to hear, try, and determine the charge according to the rules of the police department, and he is given the power to inflict suitable punishment. Id. § 184, p. 4615. The commissioner himself has general charge of the police department, and to him is intrusted general supervision over the enforcement of the statutes of the state within the city boundaries. Id. § 174, p. 4613. With or without charges, the commissioner may be removed by the mayor. Id. § 49, p. 4594. Upon the mayor himself is imposed the duty of seeing that the city officers faithfully perform their duties, and of maintaining peace and good order within the city, and of taking care that the laws of the state are enforced therein. It is his duty to receive and examine all complaints made against any city officer for neglect of duty. Id. § 46, p. 4593. If any of the officers of the city from the mayor downward willfully neglect to perform their duty, they are guilty of a misdemeanor, and may be proceeded against in the criminal courts. Pen. Code, §§ 118, 154, 471.

It has been said that mandamus may be called the spur by which municipal officers are moved to the performance of their duty. When a plain and imperative duty is specifically imposed upon such officers, so that in its performance they act merely in a ministerial capacity, without being called upon to exercise their own judgment as to whether the duty shall or shall not be performed, the writ of mandamus may be used to set them in motion.

It is also true that, while the existence of an adequate and specific remedy by the ordinary process of the courts constitutes a sufficient bar to interference by mandamus, a mere statutory penalty against the officer for failure to perform an official duty, or the existence of a remedy by indictment for the omission of such duty, constitute no objection to the granting of the writ.

The existence, therefore, of the numerous methods described above by which the relator can obtain his object without application to the Supreme Court is in itself no sufficient answer to such an application. But, after all, the writ of mandamus is an extraordinary remedy, and whether it shall or shall not be granted in a specified case rests largely in the sound discretion of the court. There is no doubt that there are circumstances where such a power may be wisely exercised. It might well be that cases would arise where the neglect of the municipal officer is so flagrant, where the wrong is of so grave a character, and where the public interests involved are so important that the court will not hesitate to resort to this remedy. But it should be used with caution. Ordinarily, it is far better that the usual course should be pursued. The interference of the Supreme Court with the details of municipal administration is not to be encouraged. These details are intrusted by the people to officers chosen directly or indirectly by themselves. These officers are criminally responsible for a willful neglect of their duties, and upon them the responsibility for the government of our cities should usually be allowed to rest.

The Supreme Court is not so organized as to enable it conveniently to assume a general supervisory power over their acts; and, indeed, such an assumption by it would be contrary to the whole spirit and intent of our government. And yet, if the application of the relator is granted, it is difficult to see where the line is to be drawn. Every person aggrieved by the breach of any law or ordinance will attempt to secure its enforcement by mandamus, rather than by the methods pointed out by the Code of Criminal Procedure. There is, for instance, an ordinance in the city of Syracuse against the use of the sidewalks by bicycles. It is habitually broken. Should the

Supreme Court compel the enforcement of this ordinance by the use of its writ? I use this illustration not to belittle the gravity of the offense pointed out by the relator, but to show the inevitable and logical result of such action as he desires. As was said before, there may be times when the power of the court should be used. This power is undoubted and unquestionable, and it may be invoked by any citizen. But it should be reserved for extreme cases. It does not seem to me that this is one of them.

Attention is called to the action of this court in People ex rel. Gallagher v. Duncan W. Peck, as Commissioner of Public Safety of the City of Syracuse. In that case an application was made to compel the defendant to enforce the laws of the state with regard to ball playing on Sunday. The affidavits of the relator showed that the defendant had failed to enforce such law; that such failure was intentional on his part, and resulted from a design to allow the law to be systematically violated. The court there held that it had the power, upon the application of any citizen of the state, to compel the defendant by mandamus to perform his duty. An issue of fact, however, was raised by the defendant, who stated that he had in good faith attempted to carry out the law in the past, and that he would do so in the future. An alternative writ of mandamus was thereupon granted. Whether, in that instance, with all of the evidence before it, the court would or would not have granted the peremptory writ of mandamus, was not determined.

The application of the relator is denied, with $10 costs.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Newell, Chapman & Newell, for appellant.
A. H. Cowie, for respondent.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on the opinion of ANDREWS, J., delivered at Special Term.

---

### KING v. SUN PRINTING & PUBLISHING CO.

(Supreme Court, Appellate Division, First Department. June 5, 1903.)

1. LIBEL—SPECIAL DAMAGES—PLEADING.
　　In an action for libel arising from a publication which is not actionable per se, the facts that show that special damages have been sustained must be specifically set forth in the complaint.

2. SAME—INJURY TO BUSINESS—ALLEGATIONS—SUFFICIENCY.
　　In an action for libel, an allegation that plaintiff has been injured in his credit personally by the libelous words, and that in respect to the publication of the work specified in the libelous article and in respect to his general business as publisher he has been prevented from procuring subscriptions for the work, without averring wherein or how, is not a sufficient allegation of special damages.
　　Laughlin, J., dissenting.

Appeal from Special Term, New York County.

Action by Moses King against the Sun Printing & Publishing Company. From an interlocutory judgment sustaining a demurrer to the complaint, plaintiff appeals. Affirmed.

¶ 2. See Libel and Slander, vol. 32, Cent. Dig. §§ 213½, 214.