## GOWAN *v.* SMITH.

1. MANDAMUS — ENFORCEMENT OF LAW — DUTY OF MUNICIPAL OFFICERS—CRIMINAL LAW.
   Mandamus will not issue to compel the police commissioner of a municipality, who has, in disregard of the statute prohibiting the opening of saloons on Sunday or after 11 o'clock at night, promulgated a rule permitting saloons to be open at additional specified hours, to summarily close up offending places, or vacate the rule.

2. INTOXICATING LIQUORS—CONSTITUTIONAL LAW—CRIMES.
   A statute which requires police officers to close all saloons violating the provisions of statute fixing the closing hours, and which declares that the punishment upon a conviction for violation of such statute should be in addition to other penalties fixed by law, is in conflict with the constitutional provision that no person shall twice be put in jeopardy for the same offense. 2 Comp. Laws, § 5395.

3. MANDAMUS—DISCRETIONARY DUTIES.
   The writ of mandamus will not issue to compel the performance of discretionary acts of an executive nature, but only to require the performance of specific ministerial duties.

4. SAME.

> Mandamus is not the proper remedy to compel the observance of the statute relating to the opening and closing hours of saloons.

> GRANT, J., dissenting.

Certiorari to Wayne; Donovan, J.   Submitted November 10, 1908.   (Calendar No. 23,075.)   Reargued May 7, 1909.   Decided July 6, 1909.

Mandamus by William H. Gowan to compel Frederick W. Smith, police commissioner of the city of Detroit, to enforce the liquor law.   An order denying the writ is reviewed by relator on writ of certiorari.   Affirmed.

*Proctor K. Owens*, for relator.

*James O. Murfin, H. E. Spalding*, and *W. L. Carpenter*, for respondent.

The purpose of this proceeding is to review by the writ of certiorari the action of the respondent in refusing an order to show cause upon a petition by the relator for a peremptory mandamus to compel Frederick W. Smith, police commissioner of the city of Detroit, to enforce, generally and in a specific instance a statute and an ordinance of the city controlling and regulating the liquor saloons in that city, which, according to the brief in behalf of the respondent, number 1,780, and to set aside his order or instruction permitting saloons to keep open on Sundays from 12 o'clock noon to 8 o'clock p. m.   So far as material to the questions involved, the statement of the petition is as follows:

The relator is a physician and a citizen of Detroit; in 1902 he established a sanitarium and residence for himself and family at No. 75-77 East High street; he has since conducted his business, which has become successful and profitable; at the time he established said sanitarium no saloons existed in the vicinity; two years ago one Snook opened a saloon adjacent to this sanitarium; said saloon has been conducted in constant and open violation of the

statute and ordinance; such open violations have greatly injured the relator's business, and threaten its ruin; he applied to said police commissioner, both orally and in writing, to enforce the statute and ordinance, and to vacate the order which said commissioner had made permitting saloons to remain open on Sundays between 12 noon and 8 o'clock p. m., in violation both of the law of the State and the ordinance of the city; said commissioner not only refused to take any action in the matter, but promptly ordered the relator from his office; he applied to the prosecuting attorney, asking for the use of his name as relator in this petition, and said prosecuting attorney absolutely declined the use of his name for that purpose. The petition was accompanied by affidavits sustaining the allegations in the petition. These affidavits, if true, show that commissioner Smith, the head of the police department in Detroit, has ignored both the law of the State and the city ordinance, and assumed to control matters which are exclusively within the province of the legislature and the common council.

The petitioner prays—

"That a peremptory writ of mandamus may be issued out of and under the seal of this honorable court commanding the said Frederick W. Smith, police commissioner of the city of Detroit, his subordinates and agents, to obey and enforce the law and ordinances as aforesaid, as it is the duty of the said Smith and his subordinates, which they owe to your petitioner and to the public generally as public officials under and by virtue of their respective offices, which they hold, and that the said Smith vacate his said rule and order permitting the saloons in the city of Detroit to be open and transact business from 12 o'clock noon on Sundays until 8 o'clock in the afternoon of said days, and particularly commanding the said Smith to close or cause to be closed the said Snook's saloon aforesaid, in accordance with the State law and the city ordinance aforesaid."

It is unnecessary to further refer to the facts set forth in the petition and affidavits attached thereto. The re-

spondent refused to issue an order to show cause, in the following language:

"The legal questions involved in this petition, under a similar state of facts, have already been before this court for judicial determination. The writ of mandamus is an extraordinary writ, to be granted only when the facts submitted are not in controversy and the legal right is clear and certain. This petition seeks to transfer the enforcement of a criminal statute within the city of Detroit to the circuit court from the courts expressly given such jurisdiction by the laws of this State. It is by no means clear from the petition that adequate remedy is not afforded in such courts, nor is the jurisdiction of this court over the subject-matter so clear as to justify this court at this time in granting the petition prayed.

"In view of the further facts that:

"(1) A test case involving a similar condition is now before the Supreme Court of this State on appeal from the circuit court for Wayne county;

"(2) Four of the judges of this court sitting *en banc* have refused to assume jurisdiction of a similar application—

"I decline to grant the order herein prayed."

In his return he gives as a further reason that the respondent, Mr. Smith, "had never been served with process or had a day in court in this proceeding."

GRANT, J. (*after stating the facts*). 1. The defense that the respondent, Smith, "had never been served with process or had a day in court in this proceeding," was not made upon the hearing in the court below. It is true that the prayer of the petition is for a peremptory writ of mandamus. This does not mean that the petitioner asks for the writ without giving the respondent an opportunity to show cause against its issuance. Neither this court nor any circuit court in this State, within my knowledge and experience, ever issued a peremptory writ upon the mere filing of the petition. In some instances courts have issued an alternative order directing the action prayed for to be taken, or that the respondent show cause

why he should not take it. The presumption is that public officers perform their duty. It would be unseemly and grossly unjust for a judge to assume, without evidence, that an officer has not only disregarded his duty, but has assumed to supplant a law of the State by an edict of his own. Only after an answer admitting the facts alleged, or upon proof thereof after its denial, should a court determine that an officer has refused to perform his duty and issue the peremptory writ. If, therefore, a case was made upon the face of the petition for the action of the court thereon, the court should have issued an order to show cause. It goes without saying that the respondent was entitled to his day in court. The issuance of an order to show cause, service of the same, and a copy of the petition upon him constitute due process of law, giving him his day in court. We must regard the order of the court as one denying an order to show cause, and determine the case upon that basis.

2. It is next urged that the proper party is not before the court, as the relator is a private individual and is therefore not entitled to coerce the performance of a public duty by a public officer; citing *Sterling* v. *Regents of University of Michigan,* 110 Mich. 368 (68 N. W. 253, 34 L. R. A. 150), and *Ayres* v. *Board of State Auditors,* 42 Mich. 422 (4 N. W. 274).

In *Sterling* v. *Regents of University of Michigan,* the point was not raised by counsel. The court, however, referred to it, and stated that—

"The petitioner does not in this petition show any interest in the matter, or the right to question the action of the board of regents, or that he was a citizen of the State, * * * or that he was in any manner injured by the action of the board."

The court then proceeded to dispose of the question in the case upon the merits.

In *Ayres* v. *Board of State Auditors,* the attorney general had placed himself in opposition to the petitioner, and appeared as attorney for the respondents. The court

stated the general rule in regard to the necessary party in such proceedings, and said that the court in certain decisions (citing them) had taken pains to "guard against any decision that would prevent complaint by a private relator, where the public interests require prompt action, and where the public prosecutors will not interfere." The court retained jurisdiction, proceeded to dispose of the question involved, and granted the peremptory writ.

In this case the relator, a private citizen, shows not only his interest and injury as a citizen common to all others resulting from the nonenforcement of the law, but also shows a direct injury both to his property, his business, and the health of his family. He shows that his application to the respondent to enforce the law in this specific case met with a denial, and that his application to the prosecuting attorney for the use of his name was denied. Under the clear weight of authority, and in reason, the petitioner was in position to launch this suit. Merrill on Mandamus, § 230; *People* v. *Board of Education*, 127 Ill. 613 (21 N. E. 187); *Chumasero* v. *Potts*, 2 Mont. 242; 13 Enc. Pl. & Pr. p. 623 *et seq.; State* v. *Yakey*, 9 Am. & Eng. Ann. Cas. 1071 (43 Wash. 15, 85 Pac. 990); *Berube* v. *Wheeler*, 128 Mich. 32 (87 N. W. 50); *Giddings* v. *Secretary of State*, 93 Mich. 1 (52 N. W. 944, 16 L. R. A. 402).

"The true distinction seems to be that where the right or duty in question affects the State in its sovereign capacity, as distinguished from the people at large, the proceedings must be instituted by the proper public officer; but that if the general public, as distinguished from the State in its sovereign capacity, is affected, any member of the State may sue out the writ." 26 Cyc. 402, 403.

See, also, 2 Current Law, p. 783; 8 Current Law, p. 825; *Van Horn* v. *State*, 51 Neb. 232 (70 N. W. 941).

3. We now come to the meritorious question in the case, namely, Does the petition present a state of facts which, if admitted or proven, justify the issuance of the writ to compel the respondent: *First*, to set aside an order or

instruction (the name is immaterial) directing the police officers under his control to permit saloons to keep open in direct violation of the law of the State and of the ordinance; *second*, to compel the respondent to enforce the law in the particular case? The use of the writ to compel the performance of official duty and to restrain illegal official action is old and too well established to require the citation of authorities. The cases wherein writs have been issued against officers are numbered by the thousands, from the early case of *King* and *Montague*, and others, 1 Barn. 72, wherein the writ was issued to compel three justices of the peace to put into execution the statute of forcible detainer, down to the present time.

The courts of this State have issued the writ against all State officers (aside from the executive), county and township officers, sheriffs, police boards, boards of health, etc. The decisions of this court are collated in 2 Stevens' Michigan Practice, § 460. The exercise of this power by the courts is essential to good government. It is said by the supreme court of Massachusetts, in *Re Strong*, 20 Pick. (Mass.) 484:

"In every well constituted government, the highest judicial authority must necessarily have a supervisory power over all inferior or subordinate tribunals, magistrates, and all others exercising public authority. If they commit errors, it will correct them. If they refuse to perform their duty, it will compel them; in the former case by writ of error, in the latter by mandamus."

Are police officers, upon refusal to execute a specific law, or to enforce it in specific cases arising under it, exempt from this jurisdiction of the courts? The enforcement of the law by police officers is just as important and essential to good government as is the enforcement of the law by other public officials. A police officer has no more right to refuse to perform his duty than has a supervisor, a health officer, a pure food commissioner, secretary of State, auditor general, or any other of the numerous offi-

cers elected and appointed to carry out the provisions of the laws which the people have enacted for their government and the public good.

The learned counsel for respondent says in his brief:

" It is as much the duty of the relator, having personal knowledge of the facts, to lodge a complaint before the police courts, as it would be the duty of the prosecuting attorney or the police department if they had knowledge of the facts."

This, in my judgment, is not the law. It is not the legal or moral duty of the private citizen who has knowledge or information of a violation of the law by a saloon keeper, or gambler, or keeper of a house of prostitution to abandon his work, go to the police court, and make a complaint. In doing so he would incur not only the hostility of the lawbreaker and his patrons, but would run the risk of personal violence and injury to his property. Such attacks, injuries, and threats have not been uncommon. No such duty is imposed upon the private citizen by law or by any decision of any court. These lawbreakers are wont to assume that the private citizen is acting in such prosecutions without any legal duty, that their violations of law do not concern him, and that so long as police officers permit lawbreaking the private citizen has no business to interfere. The private citizen, as a part of his moral duty to the public, should undoubtedly convey to the police officers any information he may have in regard to a crime believed to have been committed, and the perpetrator thereof. Such communications are absolutely privileged. *Shinglemeyer v. Wright*, 124 Mich. 230 (82 N. W. 887, 50 L. R. A. 129). We there said that the officials were under legal as well as moral obligation to keep such communications secret. I submit that this is upon the theory that these officers of the law are charged with the legal duty to investigate crimes and make complaints when they have become satisfied from their investigation that a certain party is the guilty one. It is not the theory of this government that private citizens shall take care that those

laws be executed in which all the people are interested and which concern the whole body of citizens. The people, through their Constitution and laws, have provided officers whose duty it is to see that the laws are executed. In many cases the duty is specifically imposed by statute law; in other cases it is necessarily implied. In either case the duty is imperative. The law in this case specifically imposed that duty upon the respondent. It is expressly made—

"The duty of sheriffs, marshals, constables and police officers to close all saloons, houses or places that shall be found open in violation of the provisions of this section, and to report forthwith all such violations to the prosecuting attorney, whose duty it shall be to immediately prosecute for such violations." 2 Comp. Laws, § 5395.

By section 5400 it is made—

"The duty of village and city marshals, and, in cities having no marshal, of the chief of police, or some subordinate appointed by such chief, to visit, at least once in each week, all places within their respective jurisdictions where any of said liquors are sold or kept, to learn if any of the provisions of this act have been or are being violated; and whenever any of the officers above mentioned shall learn of a violation of any of the provisions of this act, it shall be his duty to enter complaint before some justice of the peace of the proper township or city, or police justice, as the case may be, and to do whatever shall be necessary to bring the offender to justice."

The duty could not be more explicitly or forcibly expressed. If the legislature had intended to impose a like duty upon private citizens, it certainly would have expressly enacted a provision so declaring, for no such duty is imposed by the common law. The imposition of such duty upon the private citizen would be absurd and of doubtful constitutionality. Where a discretion is vested in the officer or an inferior tribunal, courts cannot interfere with the exercise of this discretionary power, unless that power is exercised with manifest injustice and the

discretion is abused.  *State* v. *Public Schools*, 134 Mo. 296 (35 S. W. 617, 56 Am. St. Rep. 503).

The petition in this case presents two distinct propositions:

(1) That the respondent has made an order suspending the law of the State, and directing that saloons may be kept open contrary to its provisions.

(2) That he refuses to enforce the law generally and in a specific case.

Upon the first proposition, I think there is no doubt of the jurisdiction and power of the court to issue the writ. The power of courts to compel by their mandates ministerial officers and inferior tribunals to vacate illegal orders made by them cannot be doubted.  The necessity of such a jurisdiction and power is obvious.  Upon this point we are not without precedent.  Where the police commissioners of a city made an order directing its chief of police not to interfere with the sale of wine and beer upon Sunday, the court issued the writ compelling the setting aside of such an order.  *State* v. *Francis*, 95 Mo. 44 (8 S. W. 1).

While the petition in this case prays for an order to compel the general enforcement of the law, it also prays for an order to compel the respondent to investigate and proceed to enforce the law in a particular instance. Where a county treasurer issued tax receipts to saloon keepers without requiring the statutory bond, a petition was presented to this court alleging a general violation of the law, without specifying any particular instance, and this court issued the writ of mandamus to compel performance of duty on his part.  *Attorney General* v. *Huebner*, 91 Mich. 436 (51 N. W. 1072).

So, where it was alleged that the police justice refused to accept second complaints against violators of the liquor law, this court held that—

" It is the clear duty of the police justice to receive and act upon complaints regularly offered for a violation of the liquor law, whether the offense is charged to have

been committed by a party against whom one complaint is pending or not." *Sadler* v. *Sheahan*, 92 Mich. 630 (52 N. W. 1030).

The mandamus in that case was denied, for the sole reason that the respondent returned that he was willing to receive the complaints and act upon them.

Should the dairy and food commissioner, or the game warden, or the fish commissioner, or the railroad commissioner, or the insurance commissioner, or the State board of health, either perversely or through misapprehension of the law, issue an order permitting violations of the law, would not the courts have jurisdiction to compel the officers to rescind such action, and inform them as to their duty under the law? Certainly a police officer is not hedged about with any sacredness of person or prerogative which exempts him from the like mandate of the court when he assumes to permit by his order violations of the law. The books furnish many cases where officers have been put in motion by the writ of mandamus when their duties went unperformed.

Under circumstances almost parallel with those in this case, the supreme court of New Hampshire issued the writ of mandamus to compel police officers to perform their duty. In that case, as in this, the claim was made that courts would not issue the writ where it involved a long series of continuous acts and virtually amounted to a supervision by the courts of the enforcement of the law by municipal officers. The court said:

"Conceding that mandamus may not be an appropriate remedy to compel a long series of continuous acts, there is no reason to apprehend that such acts will be necessary in the present case, but quite the contrary. Neither the petition nor the order of the court necessarily requires continuous action by the defendant. He is merely required, and in accordance with his legal duty, to enforce the provisions of section 16 against the specific parties, but in no particular way; in other words, 'to put himself in motion,' to substitute action for nonaction, prohibition for permission, and to do a specific thing

which experience has shown to be so efficacious against violators of that section that repeated prosecutions of them are rarely found to be necessary." *Goodell* v. *Woodbury*, 71 N. H. 378 (52 Atl. 855).

It was there also held that the remedy by removal of the officer was not an adequate one. The court said:

"It is a fundamental rule that a remedy which does not compel specific performance is inadequate, and constitutes no bar to a writ of mandamus."

See, also, 19 Am. & Eng. Enc. Law (2d Ed.), p. 747.

The public-spirited citizen or the citizen suffering special damages is entitled to the shortest route to justice and enforcement of law. It is too apparent to require argument that that route is afforded by the use of the speedy writ of mandamus. It does not lie in the mouth of an officer, charged with this duty, to say to such private citizen:

"Make the complaint yourself, or resort to the method, if any is provided, to have me removed from office, or make complaint against me in the courts for violation of my duty, as is provided by section 5390 of the liquor law."

The removal of the officer, or his conviction for refusal or neglect, at the end perhaps of a long trial, may not accomplish the result. His successor may take the same position as did his predecessor. Meanwhile the violation of the law and consequent injury continue. Probably in most cases, where the writ of mandamus has been used, the law makes some provision for the removal of the officer, or provides a penalty for his neglect of duty. It is for the citizen to choose, not for the officer to dictate, the remedy he will pursue.

Where the mayor and common council authorized licensed venders to vend their wares upon the streets and sidewalks contrary to the law, and the officers, authorized to keep the streets clear, were requested to remove the obstructions and refused, the writ of mandamus was issued to compel the officers to perform their duty and re-

move the obstructions.   *People* v. *Mayor, etc., of New York*, 59 How. Prac. (N. Y.) 277.

Where it was the duty imposed by the law upon the mayor and common council of a city to keep its streets free from obstructions for the benefit of the public, *held*, that the performance of such duty may be compelled by a citizen through mandamus, without showing that he had any legal interest in the suit.   *People* v. *Harris*, 203 Ill. 272  (67 N. E. 785, 96 Am. St. Rep. 304).   In that case there may have been as many obstructions in the street in proportion to the inhabitants as there are saloons in the city of Detroit.   The relator in that case, as in this, selected one instance of an open violation of the law and the refusal of the officers to perform their duty.

In *State* v. *Police Board of Columbus*, 19 Wkly. Law Bul. (Ohio) 347, the police board was compelled by mandamus to enforce the law in a case precisely like the one here involved.   While that case was in a *nisi prius* court, a portion of the opinion is worthy here to be quoted:

"Three defenses were made in this case.   The first is one of law, challenging the jurisdiction of this court. The other two cannot be classified.   They are remarkable. They are reprehensible.   One is that the execution of the law was not practicable, and that was one of the reasons why nothing had been done; and to sustain that view it was said that a number of cases involving violations of the Sunday law, and sent to court by a former mayor, have been nollied.   This court takes judicial notice of the fact that those cases are still on its docket, and have not been tried for want of time, since the present incumbent has been on the bench.   Neither the board nor the mayor had the right to decide that the execution of the law is not feasible.   They should do their duty, and let the failure to execute the balance of the law, if any should occur, rest where it shall belong.   Besides, in certain contingencies and certain cases, the mayor has the power to try the cases under this law, and, with or without the aid of a jury, determine them finally.   The other defense mentioned is that the law had not been enforced because there was a diversity of sentiment touching the

wisdom and rightfulness of the law. But whence does
the board or the mayor derive the power to decide that
the laws may be repealed, as it were, because they think
that some people, even a large number of people, are
opposed to their execution? Nowhere does such power
exist. Upon a parity of reasoning, nearly every law
might be nullified by executive and judicial officers. It
would be a suspension, a repeal of law, by those who
have not the power to do such a public act, by those
whose duty it is to enforce the law. I know of only two
cases where even judicial officers have a right to confine, to
limit, the laws in the enforcement of them. That is where,
as Lord Bacon said, penal laws are 'sleepers of long,'
or where they have 'grown unfit for the time.' But the
law sought to be enforced here is not of either class. It
was enacted in nearly its present form a few years ago,
and only a few weeks ago re-enacted by the supreme law-
making authority of this State. The logic of these two
last-named defenses is the logic of nullification, though I
do not use this term in a political sense at all. The
personal or private opinions of the judge of this court, or
of the mayor, or of the members of the board touching the
expediency of the Sunday law under consideration ought
to have no influence upon their official action. Where
their duty is clear, they forswear themselves if they do
not perform it. They have taken an oath to faithfully
discharge their duty; one of these duties is to carry into
effect the laws of the State and enforce their solemn
mandates."

Where the ordinance of a city required the marshal to
report to the city council every month the names of all
engaged in the liquor traffic, and to notify any unlicensed
liquor dealers to cease the traffic, and to make complaint
against all those selling without license, the relator, a
school district, filed its petition for the writ of mandamus
to compel the respondent, the city marshal, to enforce
this law, alleging that numerous persons and firms vio-
lated it. Issue was joined, and the violation of the law
established by proof. The writ was issued to compel the
performance of the duty. *State* v. *Cummings*, 17 Neb.
311 (22 N. W. 545).

The same court in 1904 (*Moores* v. *State*, 71 Neb. 522

[99 N. W. 249, 115 Am. St. Rep. 605]), issued the writ of mandamus to compel the mayor and chief of police to enforce the law against gambling, the petition designating the name of the alleged offender and his place of business. The statute law in that case as to duties of officers was no more specific than in this. The court said:

"It seems clear that it is the duty of both the chief of police and the mayor to interfere for the prevention of the public violation of the laws, and that seems to be all which is required of the officers by this mandamus. They are to see that the police officers under their charge investigate the alleged open violation of the law at a given place, and arrest such parties as are found in the act of violating it, and are to take measures for their prosecution. If it be granted, as the trial court found, that an open and public violation of the law is going on there, it would seem that it is clearly within the prescribed duties of these officers to take such steps."

In the unreported case of *Dakin* v. *Byrne*, in the New York court of appeals, decided in 1879, a petition for the writ of mandamus was filed to compel the closing of liquor saloons upon Sunday. The answer denied the allegations of the writ, viz., that the defendant intentionally permitted a violation of the law. Issue was joined, and a special verdict was rendered "that the defendant had failed and neglected to close and keep closed certain saloons during a specific period of time." It was held that there was no finding that the failure to enforce the law resulted "from a design to allow the law to be systematically violated," and the peremptory writ was denied and a new trial ordered. This was affirmed by the court of appeals, approving the opinion of the trial court. The opinion, which was affirmed by the court of appeals, is found in *Mundy* v. *Excise Com'rs*, 9 Abb. N. C. (N. Y.) 127.

The law of New York required all places, where liquor is sold, to be closed between the hours of 1 and 5 o'clock in the morning. Certain citizens applied for the writ of

mandamus to compel the officers to perform their duty. It was held:

"The mandamus may be applied for by any citizen, or class of citizens, taking an interest in the observance and enforcement of that part of the law requiring the policemen and officers of the police to enforce the law, and require the place of the licensee to be closed during these forbidden hours. *People* v. *Daley*, 37 Hun, 461. But, to entitle the applicants to the suit, they must show that the police commissioners, or the superintendent of the police force, do not intend to secure the observance of the law. On that subject their proof is materially defective. It is not to be presumed that the officers mentioned in the statute will be in any respect delinquent in the performance of their duty by this statute so clearly enjoined." *In re Whitney*, 3 N. Y. Supp. 838.

Where a sheriff refused to execute a writ, he was compelled by mandamus to do so; the court saying:

"Neither a remedy by criminal prosecution, nor by action on the case, for neglect of duty, will supersede that by mandamus, since it cannot compel a specific act to be done, and is, therefore, not equally convenient, beneficial, and effectual." *Freemont* v. *Crippen*, 10 Cal. 211 (70 Am. Dec. 711).

Where the excise commissioners, upon the complaint of a private party, for which the statute expressly provided, heard the testimony but did not decide the case, the writ was issued to compel them to decide it. The court in its opinion said:

"Of what avail to the people would be the complaints of public-spirited citizens, residents of the city, seeking to enforce the law for the benefit of all, if such complaints are deemed to be legally passed upon by contemptuous silence?" *People* v. *Meakim*, 56 Hun (N. Y.), 626 (10 N. Y. Supp. 161).

The writ was issued to compel school trustees to enforce the order of boards of health requiring all children to be vaccinated before they were permitted to attend public schools. It was there held that "mandamus is the proper

remedy to compel an officer to perform a public duty clearly imposed by law." *State* v. *Beil*, 157 Ind. 25 (60 N. E. 672).

Mr. High says that mandamus lies—

"To compel a public officer to perform a duty which is imposed upon him either by express enactment, or which results from the official station which he holds, and that, where the officer is vested with no discretion, the.writ will command the doing of the very act itself." High's Extraordinary Legal Remedies (3d Ed.), §§ 33*a*, 34.

See, also, 5 Words & Phrases Judicially Defined, p. 4326.

The lodgment in an officer of the power to enforce a law necessarily implies the duty of enforcement.

On the question of the remedy of the private citizen by mandamus or injunction, see, in addition to the above authorities, *Ingersoll* v. *Rousseau*, 35 Wash. 92 (76 Pac. 513, 1 Am. & Eng. Ann. Cas. 35); *Haggart* v. *Stehlin et al.*, 137 Ind. 45 (35 N. E. 997, 22 L. R. A. 577).

We have not discussed those authorities which hold that, where the petitioner asks the court to compel the general course of conduct of officers, and the case requires a general supervision of official conduct, the writ will not lie. That question is not necessarily involved in this case.

The relator has brought to the knowledge of the respondent a particular infraction of the law by a particular individual. If it is the officer's duty then to investigate, and if, having found that, in his opinion, the crime has been committed, it then becomes his duty to prosecute, the petition presents a case for the issuance of an order to show cause. This, I submit, is the usual proceeding where an officer, through wilfulness or an honest belief as to his duty, neglects entirely to enforce the law. He is first called upon to enforce the law in a specific case; he refuses, and the court is then invoked to compel action. Having been informed as to his duty in a specific case, it is to be presumed that he will enforce it as to all. This is

the course pursued ever since the writ of mandamus was first issued, except as in some of the cases above cited, and in others where a general refusal to enforce the law at all has been held sufficient. Courts have then set the officer in motion without determining the methods he should adopt in the performance of his duty.

I think the order of the court below should be reversed, and the case remanded with the direction to grant the usual order to show cause.

The importance of this case is my sole justification for so extended an opinion and so many quotations from the authorities.

This case was originally submitted on briefs. The above opinion, covering the points raised by such briefs, was written shortly thereafter, and copies served upon my associates who sat in the case. So great was the importance of the case that it was deemed advisable to order an oral argument before the full bench. Additional briefs have been filed by counsel for the respondent and a full oral argument had.

Some purely technical objections, which would be proper on demurrer, are now raised for the first time against the petition. These objections may be summed up under two heads:

(1) That there is no allegation in the petition that the respondent issued an order of instruction permitting saloons to be kept open on Sunday.

(2) That the prayer of the petition asks only that the respondent be directed to close the saloon kept by Mr. Snook and arrest him without warrant, as the statute provides.

These objections were not raised in the court below, or in the original briefs of counsel. A demurrer to the petition on these grounds might very properly have been sustained on account of the indefinite allegations. Respondent, however, saw fit through his counsel to base his defense upon the grounds discussed in the above opinion. It is now too late to raise these technical objections. It

has been many times decided that in suits at law, brought to this court upon writs of error, points not raised below will not be considered in this court; neither will objections be considered that are not raised in the original briefs. This is a proceeding on the law side of the court, and the same rule of pleading ought to prevail. Especially should technical objections be readily cast aside in a matter of such importance, where the interests of the public are concerned, unless they are seasonably made and the pleader given an opportunity to promptly amend or commence a new proceeding. The petition is, in my judgment, sufficient without demurrer to cover the question raised. As to the Sunday order, the petition sets forth:

"Your petitioner further shows that, notwithstanding said State law and said city ordinance, said Frederick W. Smith, police commissioner aforesaid, absolutely and in violation of law, knowingly, wilfully, wantonly, maliciously, and intentionally, and in face of the statute aforesaid, has evolved, adopted, promulgated, and by himself and all his subordinates, several hundred in number, have supplanted said ordinance and statute by a commissioner-made law which permits the said saloons in the said city of Detroit to remain open and transact business on all first days of the week, commonly called Sunday, from twelve o'clock noon on said days until eight o'clock in the afternoon on said days."

The prayer of the petition is that—

"Said Smith vacate his said rule and order permitting the saloons in the city of Detroit to be open and transact business from twelve o'clock noon on Sundays until eight o'clock in the afternoon of said days."

Can any other reasonable conclusion be drawn from this language than that the respondent has made such an order, and that it is being carried out? It is true the pleading is crude, inartificial, and not creditable to the one who drew it. I think, however, that it is sufficient, in the absence of a demurrer.

It is true that the pleader says that he can obtain no

adequate remedy by instituting proceedings in the courts against Mr. Snook because of the crowded condition of the court's dockets, and asks the application of the other remedy by arrest without warrant, as provided in the liquor statute. The statute, however, provides another remedy and furnishes to the respondent another method of enforcing the law, which it is equally his duty to adopt. By the statute above quoted it is his duty to make complaint before the proper magistrate. The facts set up in the petition in this respect and the prayer are sufficient to justify the court in requiring him to pursue that method, and the court, in my judgment, can and ought to afford that remedy, although the petitioner's counsel should think the other to be the sole remedy. A mistake or ignorance of the law on the part of counsel should not in this proceeding be permitted to defeat justice. Perhaps, however, the counsel for petitioner, as claimed in the brief filed by him since the oral argument, understood when he drew the petition that the case of *Robison* v. *Miner*, 68 Mich. 549 (37 N. W. 21), was overruled by *Burroughs* v. *Eastman*, 101 Mich. 419 (59 N. W. 817, 24 L. R. A. 859, 45 Am. St. Rep. 419). There appears to be good reason for such belief. It is, however, unnecessary now to determine whether the latter has overruled the former case.

We are not called upon now to determine whether a general allegation of neglect of duty on the part of the officer, without specifying any particular instance and asking relief therein, is sufficient to justify the interposition of the court and the issuance of the writ. One specific case is set forth, that of Mr. Snook, and the court requested to act in that particular case. Counsel for respondent cite, in support of their contention, *State* v. *Brewer*, 39 Wash. 65 (80 Pac. 1001, 109 Am. St. Rep. 858); *People* v. *Dunne*, 219 Ill. 346 (76 N. E. 570); *Alger* v. *Seaver*, 138 Mass. 331; *People* v. *Listman*, 84 App. Div. (N. Y.) 633 (82 N. Y. Supp. 784).

In *State* v. *Brewer* a petition was filed for a writ of man-

damus to compel the sheriff of a county and marshal of a city to enforce all the criminal laws of the State requiring saloons, cigar stands, and all places of business to be closed on Sundays; all keepers of houses of prostitution; all who gamble or run gambling houses; and to complain of and prosecute persons who commit offenses against the criminal laws of the State. No specific act was alleged. It was held that the remedy sought was too general to be at all practical. That decision does not touch the specific allegations of refusal to enforce the law in this case.

*Alger* v. *Seaver* has no application here. That was a proceeding to compel the marshal to station a policeman at a certain place in accordance with an order passed by the board of aldermen. The mayor declined to recognize the order as valid, and, the marshal being under his control, refused to instruct him to carry out the order. Various reasons are given for refusal to grant the order, among them being the serious one that the petition sought to deal with a subordinate officer. This case deals with the chief officer. It furthermore appeared in that case that the subordinate officer was ready to comply with the direction of the board upon the assent of the mayor, under whose supervision he was.

The petition in *People* v. *Dunne* is nearly as general. It cites no specific instance of violation, or of a demand for the performance of his duty in a particular case.

In *People* v. *Listman,* the petition asked that the commissioner of public safety be required to enforce the law against Sunday concerts. It is significant that the commissioner was ready to and did perform his duty. He made complaints before the proper magistrate, but the magistrate refused to issue the warrants. The purpose there was to have the commissioner cause the arrest of all persons violating the law, without a warrant, which it was held he did not have the power to do. The court in no uncertain language held that it was the plain duty of the commissioner to see that the laws of the State were enforced. The commissioner had done all that he could

do, and all that the law required. The responsibility then rested upon the court.

I submit that those cases do not control this. This is not an attempt to enforce by mandamus the general criminal laws of the State as to common-law crimes, such as homicide, burglary, larceny, rape, forgery, arson, etc. Prosecutions in these cases are governed in this State by the common-law procedure, which has proved amply sufficient for the purpose. When, however, the State, through its lawmaking body, has made certain acts and conduct, legal at the common law, illegal, it has provided a means for the enforcement of such laws, and imposed the duty of enforcement upon specified officers named in the statute. Such statutes must necessarily provide means for enforcing them, otherwise they would be of no avail. These officers specifically charged with that duty have been generally compelled by the courts of the United States and of the States through the writ of mandamus to enforce the law in accordance with the statute, whenever they wilfully or through misconception of their duty have refused or neglected to do so.

I have above mentioned some of the officers upon whom the duty is imposed, and a few of the cases where they have been compelled to act. I know of no reason why a police officer, charged with the duty to enforce a specific law in a specified manner, should be exempt from the wholesome supervision and direction of the court. If the writ should issue against the county treasurer, as in *Attorney General* v. *Heubner*, 91 Mich. 436 (51 N. W. 1072), to compel him to act in 1,500 or 2,000 saloon cases involving the giving of bonds, why, for the same reason, should not this respondent be compelled to investigate honestly and make complaint against these same saloon keepers for a violation of the law? If the writ should issue, as in *Sadler* v. *Sheahan*, 92 Mich. 630 (52 N. W. 1030), to compel courts to accept complaints, why, for the same reason, should it not compel the officers to make

them ? The duty in the one case is no more specific than in the other.

Something is said about a discretion lodged in the respondent. The only discretion lodged in him is to refuse to make complaints when, after proper and honest investigation, he has become satisfied that no offense has been committed. He has no discretion to refuse to enforce the law. To hold that he has, would be subversive of government by law, and place in the hands of officials the power to set any law of the State aside, as, according to the allegations of the petition, the respondent has done in this case. No case cited in behalf of respondent intimates that there is any discretion in this particular lodged in the officer.

It is conceded by counsel for respondent, and stated in some of the authorities they cite, that,

" Cases may arise where the neglect of the municipal officer is so flagrant, where the wrong is of so great a character, and where the public interests involved are so important, that the courts will not hesitate to resort to this remedy" (mandamus).

The effect of the nonenforcement of this and similar laws, and the unrestricted saloon, is shown in *Kurtz* v. *People*, 33 Mich. 279; *Klein* v. *Pollard*, 149 Mich. 200 (112 N. W. 717, 10 L. R. A. [ N. S.] 1008, 119 Am. St. Rep. 670 ), and in *Crowley* v. *Christensen*, 137 U. S. 86 ( 11 Sup. Ct. 13 ). If there is a more flagrant neglect of duty on the part of a municipal officer than that alleged in the petition; if there is a case where the public interests involved are more important, or where the wrong perpetrated is of greater character—I have failed to note it in any of the many decisions which I have examined. I am unable to conceive a case of greater importance to the morals and welfare of the people in protecting young men and young women as well from evil influences and in preventing crime.

157 MICH.—30.

In *People* v. *Listman, supra,* relied upon by respondent, it is said:

"When a plain and imperative duty is specifically imposed upon such officers, so that in its performance they act merely in a ministerial capacity, without being called upon to exercise their own judgment as to whether the duty shall or shall not be performed, the writ of mandamus may be used to set them in motion."

For reasons which I have stated in *Wilson* v. *Cleveland, post,* 510 (122 N. W. 284), *People* v. *Whipple,* 41 Mich. 548 (49 N. W. 922), and similar cases have no application here. That case was an attempted interference with acts of members of a legislative body.

It is stated as an objection to issuing the writ in this case that it would impose a heavy burden upon the courts by the institution of many suits. This argument, if it may properly be called one, is based upon the false theory that when the respondent performs his duty, makes complaints and arrests, the carnival of violation of law will continue. This is not in accord with human experience. The presumption is that when the respondent performs his duty in the case of Snook, and informs others in the like business that they will receive like treatment, the open violations of law will substantially cease.

When public officers refuse to perform their statutory duties, and not only sanction but openly permit the violations of law, to the detriment of public morals, public decency, and good government, and to the special injury of those living in the vicinity of the open violation, has such injured citizen no remedy except a civil suit against the violator of the law, or a prosecution of the officer, or a proceeding to remove him from office? There are several hundred policemen in the city of Detroit under the control of the respondent. The petitioner and other good citizens pay taxes to support this body of men. What for? Why should the private citizen be required to leave his business and prosecute at his own expense when he has been taxed to pay officers to perform that duty? To

deny the citizen the writ of mandamus under such circumstances would, in my opinion, be a reproach to the law.

BROOKE, J.   I am unable to agree with the conclusions reached by my Brother GRANT in this matter.   The petition for mandamus sets out substantially that:

(1) One Snook, a saloon keeper on John R. street, habitually violates the law by keeping his saloon open after 11 o'clock at night and upon Sundays.

(2) That the relator, a physician who conducts a private sanitarium in the neighborhood, has been specially damaged, through the disturbance of his family and business, by the noise and disturbance incident to Snook's violations of the law.

(3) That the relator notified the police commissioner twice by mail of such violation of the law; that no reply was received to the letters, and that the violation continued.   That the police commissioner has adopted and promulgated " a commissioner-made law " which permits saloons in the city of Detroit to remain open and do business on Sundays between noon and 8 in the evening.

(4) That many complaints for the violation of law against opening saloons after 11 o'clock at night and upon Sundays have been filed in the Detroit police court against various saloon keepers, and have been pending for some months, and that, because of the volume of business of said court and other suits therein taking precedence over those for violations of the saloon law, it would be almost impossible for the petitioner to get relief by the ordinary process before the destruction of his business.

The prayer was for a peremptory writ of mandamus requiring:

(*a*) That the police commissioner obey and enforce the closing law, as is his duty.

(*b*) That the commissioner vacate his rule and order permitting saloons to be open and do business on Sundays between noon and 8 in the evening.

(*c*) That the commissioner close Snook's saloon, or cause it to be closed, as the law requires.

Attached to the petition were the affidavits of the rela-

tor, of Mr. Watt, Mr. Flower, and Mr. Owens, relator's counsel.    Relator's affidavit reiterates in effect the statements contained in the petition.    The affidavits of Mr. Watt and Mr. Flower show that on September 20th they found several saloons open, and that they asked certain policemen to close them; that one of them, in company with Mr. Owens, visited the police commissioner, and called his attention to the fact of saloons being open and doing business in violation of law; that Mr. Owens called the commissioner's attention to section 5393 of the Compiled Laws, and demanded of the commissioner that he close the saloons in accordance therewith.    Mr. Owens further deposes that he asked Mr. Yerkes, the prosecuting attorney, for the use of his name in the proceedings, which was refused by Mr. Yerkes, because a case embracing all the facts set up in the petition was now pending in the Supreme Court, and because the facts set up in the petition only involved the interest of a private individual, and was matter for a civil action only.

It is apparent that the plaintiff in certiorari proceeds upon the theory that the police commissioner, through his subordinates, has the right to summarily close any saloon found open by the officer at times forbidden by law; relying for this authority upon section 5395, 2 Comp. Laws, which makes it the duty of police officers to—

"Close all saloons, houses, or places which shall be found open in violation of the provisions of this section, and to report forthwith all such violations to the prosecuting attorney, whose duty it shall be to immediately prosecute for such violations.   *   *   *   Any person found in the act of violating any of the provisions of this section shall be deemed guilty of a breach of the peace and punished accordingly, and the arrest therefor may be without process.    And this punishment shall be taken to be in excess of all other manner of punishment in this act providing for violations of this section.    All officers authorized to make arrests for breach of the peace shall have like power to make arrests under the provisions of this section as in other cases of a breach of the peace."

This section received judicial construction in the case of *Robison* v. *Miner*, 68 Mich. 549 ( 37 N. W. 21 ), wherein the court said:

" This statute is practically, if carried out, a general warrant itself, directing all officers to visit houses and business places without other authority, and make searches and arrests, and close up places of business on their own well or ill founded notion that the law has been violated."

See, also, *Burroughs* v. *Eastman*, 101 Mich. 419 (59 N. W. 817, 24 L. R. A. 859, 45 Am. St. Rep. 419); *Klein* v. *Pollard*, 149 Mich. 200 (112 N. W. 717, 10 L. R. A. [N. S.] 1008, 119 Am. St. Rep. 670).

In commenting on section 5395, in the case of *Burroughs* v. *Eastman*, this court said:

" These provisions are peculiar and incongruous. It seems to have been an attempt on the part of the legislature to confer the power of arrest by a process of first declaring that to be a breach of the peace which is not such in fact, and by further providing that a party might be punished for such breach of the peace in addition to and beyond the punishment provided by the same statute. The conclusion that these provisions could not be maintained, in view of the constitutional provision that no person shall twice be put in jeopardy for the same offense, was undoubtedly correct."

It is quite clear, therefore, that the only action which the plaintiff in certiorari can demand from the police commissioner is that he proceed to collect evidence against the offending saloon keeper, and if such evidence is found by him to be sufficiently conclusive to warrant the making of a complaint, then to make such complaint, and to proceed in the ordinary orderly prosecution thereof. This, however, is not what plaintiff in certiorari desires. Indeed, by the very terms of his petition, he avers that by such a course " It would be almost impossible for this petitioner to get relief," and the reason that such a course would be barren of results to the petitioner is that many such complaints are now awaiting trial in the recorder's

court, and because of the volume of business in that court, and other suits therein taking precedence over those of violations of the saloon law. The averments of the petition clearly indicate that the police commissioner of the city of Detroit does not refuse to enforce the law in the only manner in which he can legally enforce it, *i. e.*, by complaint and prosecution, but, on the contrary, that he has made so many complaints for liquor violations that the same have been pending in the recorder's court without trial.

While it is true that a writ of mandamus will issue commanding a public official to perform a specific ministerial act, it does not lie against officials to compel the enforcement of the criminal law by obtaining complaint for its violation and by arrest. This is a discretionary executive power, and should not be subjected to the control of the courts except in cases of gross and manifest abuse. Without going over in detail the cases cited by Mr. Justice GRANT in support of his conclusions, the assertion is ventured that, upon a careful examination of the facts upon which the action was predicated in each case, they will be found distinguishable from the case at bar. Upon the other hand, there is abundant authority as well as reason for the contrary conclusion. See *People* v. *Listman,* 84 App. Div. (N. Y.) 633 (82 N. Y. Supp. 784), where that court said:

"But, after all, the writ of mandamus is an extraordinary remedy, and whether it shall or shall not be granted in a specific case, rests largely in the sound discretion of the court. * * * It might well be that cases would arise where the neglect of the municipal officer is so flagrant, where the wrong is of so grave a character, and where the public interests involved are so important, that the court will not hesitate to resort to this remedy. But it should be used with caution. Ordinarily it is far better that the usual course should be pursued. The interference of the supreme court with the details of municipal administration is not to be encouraged. These details are intrusted by the people to officers chosen directly or indi-

rectly by themselves. Those officers are criminally responsible for a wilful neglect of their duties, and upon them the responsibility for the government of our cities should usually be allowed to rest.

"The supreme court is not so organized as to enable it conveniently to assume a general supervisory power over their acts; and, indeed, such an assumption by it would be contrary to the whole spirit and intent of our government. And yet if the application of the relator is granted, it is difficult to see where the line is to be drawn. Every person aggrieved by the breach of any law or ordinance will attempt to secure its enforcement by mandamus, rather than by the methods pointed out by the code of criminal procedure. * * * There may be times when the power of the court should be used. * * * But it should be reserved for extreme cases."

Again, in *People* v. *Dunne*, 219 Ill. 346 (76 N. W. 570), the relief prayed was a mandamus commanding the mayor to use the power given him for the enforcement of this law (the liquor law), and to secure the prosecution of all persons violating it, and the revocation of the license of saloon keepers violating the law. That court said:

"The remedy by mandamus is one which is allowed to compel the performance of some duty owing to an individual or to the public. The duty must be specific in its nature, and of such character that the court can prescribe a definite act or series of acts which will constitute a performance of the duty, so that the respondent may know what he is obliged to do and may do the act required, and the court may know that the act has been performed and may enforce its performance. It is not necessary, in all cases, that the performance of the duty should consist of a single act. It may be a succession of acts, if the duty is specific and the acts are of such a nature that the court can supervise the performance of the duty and the execution of the mandate. For example, the court may require a railroad company to relay a portion of its track which has been taken up, and operate it, to operate its railway as a continuous line, to deliver freight to a certain elevator, to run a daily passenger train for the accommodation of passengers over its road in place of a mixed stock and passenger train, or to stop all of its passenger trains at a certain station; but the writ has never

been made use of, and does not lie in this State, at least, for the purpose of enforcing the performance of duties generally. It will not lie where the court would have to control and regulate a general course of official conduct and enforce the performance of official duties generally. In such a case the court could not prescribe the particular act to be performed and enforce its performance. It is plain that in this case, where the court is asked to require the defendant to adopt a course of official action, although it is a course required by the statute, and imposed upon him by the law, it would be necessary for the court to supervise, generally, his official conduct, and to determine in very numerous instances whether he had persistently, and to the extent of his power and the force in his hands, carried out the mandate of the court and performed his official duty. It is manifest that where there are about 7,000 saloons in a city which are kept open on the Sabbath day in violation of law, as is alleged in this case, the court would not only have to enforce a general course of official conduct on the part of the mayor, but must also determine in numerous instances whether ground existed for the revocation of licenses, whether there had been violations of law, and to what extent he had endeavored to perform his duty with the force and facilities at his command for doing it. The writ will not lie for any such purpose. For the court to assume the management of municipal affairs in the city of Chicago would be to depart from its proper sphere and assume governmental functions, which are outside of the jurisdiction of the courts and not within the remedy by writ of mandamus."

In *People* v. *Busse*, 238 Ill. 593 (87 N. E. 840), the prayer of the petition is that the mayor be commanded to use his authority to enforce this statute (the liquor statute) against Kenna by compelling him to keep his saloon closed on Sunday; that, if Kenna refuse to obey the law, he secure his prosecution therefor and revoke his license. The writ was denied, and the court said:

"Counsel for appellant confuse the functions of the executive and judicial departments of government. If their contention was to prevail, the mandate of the court would be substituted for the statute which denounces misfeasance and malfeasance in office. * * * It is not here sought to have the mayor commanded to do a specific thing in ref-

erence to a violation of the law which has already taken place, but the purpose is to have him commanded to enforce the statute above set out, which he might do in any one or all of several ways against Kenna, in reference to his two dramshops, so far as future violations of that statute are concerned."

See, also, *State* v. *Brewer*, 39 Wash. 65 (80 Pac. 1001, 109 Am. St. Rep. 858); *Alger* v. *Seaver*, 138 Mass. 331.

I am clearly of the opinion that in the case at bar the writ should be denied. While it is true that the relator claims to be specially damaged by the particular infraction of the law by Snook, it is equally true that there are in the city of Detroit more than 1,500 saloons, many of which unquestionably would afford a private relator, living in the vicinity, reasons quite as strong as are the relator's in the case at bar for the relief demanded. This court is not constituted to properly take cognizance of such infractions of the law by the use of the extraordinary writ of mandamus, nor would it be effective if used. Should this court issue the writ, it could only command the police commissioner to proceed to enforce the law as to Snook's saloon, in which event the commissioner would gather evidence of Snook's infraction of the law, make complaint before the proper officer, and proceed to prosecute through the prosecuting attorney. In obeying the mandate of this court in this respect, the commissioner is bound to use the discretion with which he is clothed. He is charged not alone with the execution of the liquor laws of the State within the city of Detroit, but he is likewise charged with the suppression of all crime and the conservation of the peace. To enable him to perform the duties imposed upon him by law, he is supplied with certain limited means. It is entirely obvious that he must exercise a sound discretion as to how those means shall be applied for the good of the community. He cannot withdraw the entire force at his command from their ordinary duties and detail them to collect evidence against lawbreaking saloon keepers, lest other crimes should multiply. That a certain

portion of his force was so employed is apparent from the averments of the petition. The writ should not issue unless this court is prepared to exercise a constant or recurring supervision over the daily acts of the police commissioner, and a definite control of the discretion with which he is clothed by law. This cannot be done.

In the case of *Fitzgerald* v. *Whipple*, 41 Mich. 548 (49 N. W. 922), this court said:

"A mandamus would be entirely inefficient in reaching the mischief complained of, as no court by such means could keep up a continuous or repeated attendance. Courts are not created to conduct the municipal affairs of cities, and nothing short of any such general supervision would reach such cases as the present."

This language is peculiarly pertinent when applied to the facts at bar.

If, as averred in relator's petition, the acts of Snook constitute a nuisance to relator, he has a complete remedy in equity, as determined by this court in a very recent case. See *Detroit Realty Co.* v. *Barnett*, 156 Mich. 385 (120 N. W. 804). It cannot be said that the petition makes out such a case of gross abuse of discretion on the part of the commissioner as would warrant judicial interference.

The writ was properly denied.

MONTGOMERY, HOOKER, and McALVAY, JJ., concurred with BROOKE, J.

BLAIR, C. J. I concur in the result.

OSTRANDER, J. If the averments of the petition showed that relator was affected, otherwise than as one of the public, by the alleged "commissioner-made law," I should agree that an order to show cause should be issued. But he makes no such showing, and therefore I favor an affirmance of the order of the circuit court.

MOORE, J., concurred with OSTRANDER, J.