GEORGE v. TRAVIS.

1. INTOXICATING LIQUORS—SALOONS—RELIGIOUS INSTITUTION.
    Under Act No. 291, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 5091), prohibiting any saloon from doing business within four hundred feet of the front entrance of a church, the distance was to be measured along the property and street line between the points nearest to the front entrance of the church, and of the saloon, and a church located on the northeast corner of two intersecting streets having its entrance in the southwest corner of the building, and doors opening on both streets into the vestibule, from which there was a single entrance into the church, being less than four hundred feet from the door of the saloon on the opposite side of the street and at the end of the block, was within the statutory limits.

2. SAME—LICENSE—CANCELLATION OF LICENSE—EQUITY—CHURCH.
    A saloon keeper who had paid his tax, secured his license, and filed his bond with the approval of the public authorities, and who was attempting to carry on his business

within four hundred feet from the front entrance of a
church, may be enjoined by a court of equity from carry-
ing on his business as unlawful and the cancellation and
surrender of the license will be decreed by the court,
regardless of whether the conduct of his business amounts
to a nuisance.

3. INJUNCTION—INTOXICATING LIQUORS—PARTIES COMPLAINANT.
   On the relation of interested taxpayers, the prosecuting
   attorney of the county was the proper officer to file the
   bill of complaint to enjoin the conduct of a saloon within
   the distance of four hundred feet along the street from
   a church.

Appeal from St. Clair; Tappan, J. Submitted Jan-
uary 18, 1915. (Docket No. 124.) Decided April 19,
1915.

Bill by Thomas H. George, prosecuting attorney for
the county of St. Clair, on the relation of George N.
Jones and others, against Warren S. Travis for an
injunction and other relief. From a decree for com-
plainant, defendant appeals. Modified and affirmed.

*Moore & Wilson,* for complainant.

*Erskine & Lungerhausen,* for defendant.

The amended bill was filed July 16, 1914, by the
prosecuting attorney of St. Clair county as complain-
ant, "upon the relation" of persons named therein,
citizens of the county, who composed the board of
trustees of the Methodist Episcopal Church of the
city of Marine City, in said county. There was an
answer, replication, and hearing in open court, and a
decree was entered in accordance with the prayer of
the bill, restraining defendant perpetually—

"from conducting his saloon, or any saloon, in the
building known as the Broadway Hotel in the city of
Marine City having its street door opening on the
public street in the said city of Marine City within
a distance of 400 feet along the street line from the

Broadway front door of the Methodist Episcopal Church, located at the corner of Broadway and Main streets in the said city of Marine City. A writ of injunction may be issued in conformity with this decree."

It is recited in the decree that the material allegations of the bill are found to be true. Under subdivision (*f*) of Chancery Rule 37, counsel have stipulated the facts of the case for review, and the trial court has certified that the facts stipulated are in accord with the testimony and satisfactory to the court. Eliminating the portion which refers to certain exhibits, they are:

"I. That the Broadway Hotel, mentioned in the bill of complaint and pleadings in said cause, was erected and maintained as a hotel many years prior to the erection of the said Methodist Episcopal Church mentioned in the pleadings in said cause, which was constructed in the year 1904, and that during that time, and at the time the church was established, a bar where intoxicating liquors were sold was maintained in said hotel. That about three years prior to the filing of the bill of complaint in this cause Messrs. John Jones and Hale P. Saph became owners of the property through foreclosure proceedings. That thereafter the hotel was vacant, and for about three years prior to May 1, 1914, the premises were unoccupied and became much dilapidated.

"II. That in April, 1914, the defendant Travis obtained an option from the owners to purchase the property. That he had been informed that the trustees of said church had objected to the issuance of a license and maintenance of a barroom in said hotel, on the claim that it was within the 400-foot limit. That on the advice of counsel, before he obtained his license or improved the property, on April 5, 1914, he came to Marine City and observed the use made of the doors of the church during Sunday service, and came to the conclusion that the only front entrance to the church was on Main street and outside the 400-foot limit. That thereafter he applied for and obtained a license, and established and maintained a bar

where he sold intoxicating liquors, in the Broadway Hotel, from May 1, 1914, to the date of hearing.

"III. That after he purchased the premises he expended about $2,400 in making repairs and improvements. That in its general appearance and surroundings the property is an improvement to the locality. That defendant conducts a quiet and orderly house, that is maintained and patronized as a hotel, with a barroom that is also maintained and operated by defendant.

"IV. That said hotel is on the south side of Broadway street, facing north and with Market street extending along its west side. That the front entrance is on Broadway, at the northwest corner of the building, and opens into an office or lobby. That at the south side of the lobby a door leads into a narrow hallway. That from this hallway patrons may descend a stairway to a basement washroom and public toilet, and they may also turn to the right and pass to the south through a doorway opened and closed by a roller door into the barroom south of the hallway. That a common door opens from this barroom to the west on a platform and steps onto Market street. That a cinder pathway extends from these steps and along the west side of the hotel north to Broadway.

"V. That the church in question is situated on the corner of Broadway and Market [Main] streets, on the north side of Broadway and the east side of Main street. That Main street is one block west from Market street. That the lot upon which the church is built fronts on Main street. That a door opens from Broadway into a small lobby near the middle of the south side of the church building, and from this lobby those attending church services, church meetings, and Sunday school pass into either the Sunday school room or the church auditorium. That there is a large opening between the main auditorium and this Sunday school room, with doors which are frequently opened, throwing both into one auditorium.

"VI. That the principal entrance into the auditorium proper is through a double door across the corner of the side wall of the church on Broadway and Main streets; this opening facing southwest. At this southwest corner of the church building there is a square tower, the base of which forms a vestibule

10 feet square. From Broadway steps lead from the sidewalk north into the vestibule through a double door. From the sidewalk on Main street like steps lead east through a like double door into the vestibule. Persons attending the church pass from the vestibule from both these entrances directly into the auditorium through the double door at its southwest corner. The doors leading into the church at the Broadway entrance and the Main street entrance are identical in construction and lead to a common entrance into the auditorium. Prior to the beginning of suit the west entrance was used by the congregation and attendants slightly more than that on the south. At all times since the church was built the membership and congregation have used the south door as a means of entering into and leaving the church. Since this suit was begun the south entrance has been used somewhat the most.

"VII. The following distances are established: (1) From a point on the street line on Market street nearest the door of the barroom of defendant's hotel, measuring along the east property and street lines of Market street, north to and across Broadway to its north line, thence west along the north property and street lines of Broadway to a point on said line nearest the doorway into the Sunday school auditorium on Broad street, is 353.6 feet. (2) From a point on Market street nearest the door of the barroom measured along the east property and street line of that street north to and across Broadway, to its north property and street lines, thence along the same west to a point nearest the center of the double door on the south side of the vestibule leading into the auditorium of the church, is 383.9 feet. (3) From a point on Market street nearest the door of the barroom, measured along the east property and street lines, north to and across Broadway, to its north property and street lines, thence west along said last-named lines to the street line on the east side of Main street, is 399.8 feet. (4) From a point on Market street nearest the door of the barroom, measured along the east property and street lines north to and across Broadway to its north property and street lines, thence west along the same to the east property and street lines of main street, thence north along said last-named

property and street lines to a point nearest the center of the double door on the west side of the vestibule leading into the auditorium of the church, is 415.9 feet."

The questions presented to and answered by the court below, and again presented in this court, are:

"(1) Whether or not the prosecuting attorney has authority to appear and file the bill of complaint.

"(2) Whether or not the front door of the defendant's saloon is within 400 feet of the front door of the church in question, within the intent and meaning of section 37, Act No. 291 of 1909.

"(3) If it be determined that defendant's saloon or barroom is prohibited by virtue of the above-named act, does its illegal operation day after day make it a public nuisance that may be enjoined by a court of equity?"

OSTRANDER, J. (*after stating the facts*). 1. The second question may be first considered. The church fronts upon Main street. The entrance is in the southwest corner of the building, and approached as well from Broadway, which is the street south of the church, as from Main street, which is the street west of the church. A point on Main street nearest the front entrance is more than 400 feet from the saloon. The point on Broadway nearest the entrance is less than 400 feet from the saloon. Having gained the little corner vestibule of the church from either street, there is a single entrance into the body of the church. We endeavored, in *People* v. *Schneider*, 170 Mich. 150 (135 N. W. 973), to so interpret the somewhat ambiguous language of the statute as to afford a workable rule, doing no violence to the language employed by the legislature. Within that rule, the question must be answered in the affirmative, although it is probable that, if the saloon was situated in a different direction from the church, it would be claimed that

the measurement should be made to a point in Main
street nearest the front entrance to the church.

2. The other questions may be considered together.
Defendant has paid his tax, secured his license, filed
his bond, with the express assent and approval of the
public authorities charged with official duties in con-
nection therewith. It turns out that, applying the
statute as it may be applied, and as I think it should
be applied, the saloon door is about 16 feet less than
400 feet from the front entrance to the church. The
statute provides that:

"No license shall be issued to any one to open up
and establish a new bar or saloon having its front
entrance within four hundred feet along the street
line from the front entrance of a church,  *   *   *
and after this act takes effect an attempt to open up
and establish a new bar  *   *   *  having its front
entrance within four hundred feet  *   *   *  from
the front entrance of a church  *   *   *  shall be a
violation of this ·act, and the person  *   *   *  so
doing, upon conviction thereof, shall be subject to the
penalties prescribed," etc.   Sec. 37, Act No. 291, Pub.
Acts 1909 (2 How. Stat. [2d Ed.] § 5091).

It is not attempted to subject defendant to the pains ·
and penalties of the statute, but, upon the complaint
of the prosecuting attorney to a court of equity, to
close the saloon, or bar, by the order of the court and
the writ of injunction, and the question is presented
whether a court of equity may properly grant the
relief. Upon this point the argument advanced by
complainant is that the saloon is a public nuisance,
which may be abated, or restrained, by a court of
equity. This court has held that equity has jurisdic-
tion to abate a saloon, if a private nuisance, although
the nuisance is also a breach of the criminal law.
*Detroit Realty Co.* v. *Barnett,* 156 Mich. 385 (120
N. W. 804, 21 L. R. A. [N. S.] 585). We held in
*Gowan* v. *Smith,* 157 Mich. 443 (122 N. W. 286), that
mandamus was not the proper remedy to compel the

observance of the statute relating to the opening and closing of saloons. In *Andrews* v. *Auer*, 177 Mich. 244 (143 N. W. 68), it appeared that the saloon keeper stated, in applying for a license, that he was a citizen of the United States and of Michigan. It was charged in the bill of complaint that he was not a citizen of the United States, and for relief it was prayed that the approval of his application for license be declared null, that the license be canceled, and that he be restrained from further carrying on the saloon business. Without deciding whether a place where intoxicating liquors are sold contrary to law is a public nuisance, it was held that the jurisdiction of the court of equity extended to the canceling of certificates and other instruments executed by government officials and boards, when obtained by fraud or illegally. The cases cited in the opinion, the most of them, apply the rule that in cases of fraud the jurisdiction of courts of equity is concurrent with the jurisdiction of courts of law, and that courts of equity may grant more complete relief by compelling cancellation, or surrender, of instruments. See *Mack* v. *Village of Frankfort*, 123 Mich. 421 (82 N. W. 209), where such relief was denied, although fraud was alleged, on the ground that complainant had an adequate remedy at law. The cases of *Village of Wolverine* v. *Circuit Judge*, 162 Mich. 713 (127 N. W. 744), and *Starks* v. *Circuit Judge*, 173 Mich. 464 (139 N. W. 29, 43 L. R. A. [N. S.] 1142, Am. & Eng. Ann. Cas. 1914D, 773), were cases of applications to this court for writs of mandamus to compel the circuit judge, in the first case to dissolve, and in the other case to issue, a writ of injunction. The relief asked for in the first case in the court below was restraint of official action, in the other to restrain the conducting of a saloon. In neither case in this court was the question now being considered presented. In *Osborne* v. *Township Board*

*of Richland Township,* 183 Mich. 220 (150 N. W.
249), the direction of official action, by mandamus,
was the relief asked for in the court below, the pro-
ceeding being reviewed here by certiorari.

In no case called to my attention has this court
intimated that the jurisdiction of equity courts ex-
tended to enforcement of the liquor law or the control
of saloons or saloon keepers; that equity will inter-
fere to prevent violations of the liquor law, or to
inflict penalties therefor. There is, however, a dis-
tinction between cases like the one at bar and *Andrews*
v. *Auer, supra,* and cases in which, upon the theory
that an illy conducted saloon is a public nuisance, a
court of equity is asked to interfere. The distinction
lies in the fact that in one class of cases, like the
present one, the defendant has no right to do business
at all, but only has an apparent right, evidenced by
the results of his own and of official action, while in
the other class of cases the saloon keeper has both a
real and an apparent right to conduct the business,
but conducts it badly. In the second class of cases,
the saloon keeper may conduct his business properly
and within the law; in the first class, he has no right
to conduct the business, at the particular place, at all.
There is in each case responsibility to the criminal
law; but in the cases of the first class the penalty
is incurred at the outset, is continuing, and cannot be
escaped by any method of conducting the business,
while in the other class it is incurred only as in the
manner of doing business the law is violated.

Defendant cannot, if he would, lawfully carry on
his business at his present place of business, and every
instrument and every vote or resolution upon which
his apparent right is founded ought not to have been
given. Possessing the apparent right, the evidences
of public permission and indorsement, a court of
equity may declare them to be ineffective and insuffi-

cient, and compel their surrender, or cancellation. In *Andrews* v. *Auer, supra,* the evidences of right to do business were obtained by fraud; in this case, it must be presumed, they were obtained because of a misapprehension of, or lack of knowledge of, facts which, if understood, would have led to the refusal of the right.

In this view of the matter, the prosecuting attorney was a proper complainant, informing officer, the prayer of the bill may be treated as amended, and a decree entered in this court conformably with the views herein expressed. Neither party will recover costs of this appeal.

BROOKE, C. J., and MCALVAY, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.