JONES, *ex rel.* HALL, *v.* TURNER.

INTOXICATING LIQUORS—REVOCATION OF LICENSE—JUSTICES OF THE PEACE—LIQUOR BONDS.

An applicant for a license to sell intoxicating liquor is not an innocent party who will be protected by the face of the record showing approval of his bond, where he knows that at a meeting of the township board his application was rejected by an equally divided vote and that one of the two senior justices who, with the supervisor and township clerk, composed the board, was opposed to the approval of the bond, procures counsel after its rejection, induces the supervisor to call another meeting, knows that the justice who was opposed to him was not at such meeting and that his place was taken by a junior justice, which was permissible when a senior justice was unable to act, and three votes were cast in favor of the approval of the bond, including that of the junior justice, the other justice protesting that the meeting was illegal, and that the other senior justice was able to come but was not called. OSTRANDER, STEERE, and BROOKE, JJ., dissenting.

Appeal from Ontonagon; Shepherd, J., presiding. Submitted April 20, 1917. (Docket No. 172.) Decided July 30, 1917.

Bill by John Jones, prosecuting attorney of Ontonagon county, on the relation of William Hall, against Alex Turner for an injunction restraining defendant from conducting a saloon under an illegal license, and for the cancellation of the license. From a decree for complainant, defendant appeals. Affirmed.

*John Jones,* in pro. per.

*Michael J. Doyle,* for defendant.

MOORE, J. The plaintiff is prosecuting attorney of

the county of Ontonagon, and as such files this bill of complaint at the relation of William Hall, a member of the township board of Stannard township. The bill prays for injunction against conducting a saloon under a license claimed to be illegal and for the cancellation of the license. From a decree in accordance with the prayer of the bill the case is brought here by appeal.

The statutory provisions material here are as follows:

"The supervisor, the two justices of the peace whose term of office will soonest expire, and township clerk, shall constitute the township board, any three of whom shall constitute a quorum for the transaction of business." 1 Comp. Laws, § 2343 (1 Comp. Laws 1915, § 2122).

"When from any cause there shall not be three of the officers constituting such board, competent or able to act, one of the remaining justices, on being notified by any member of said board, shall meet with any members of the board, and shall have the same authority as the other members of the board." 1 Comp. Laws, § 2344 (1 Comp. Laws 1915, § 2123).

There is not much dispute about the facts. On April 10, 1916, at a meeting of the township board attended by the supervisor, the township clerk, and the two justices of the peace, one of whom is the relator, whose terms of office would soonest expire, the liquor application of defendant Turner was considered. On April 14, 1916, at a meeting attended by the same men, two men voted to accept the application, one member voted no, and one did not vote, and the application was declared carried. At a meeting of the township board attended by the same officials held April 28, 1916, a motion to reject the bond of Mr. Turner was carried. On the following day, at a meeting attended by a junior justice of the peace, the bond was accepted, Justice Kaiser protesting that the meeting was illegal.

Justice Hall, a senior justice who had attended all of the previous meetings, was in the township, and was able to attend this meeting, but had no notice it was to be held.

The following occurs in the testimony of the clerk:

"As township clerk of Stannard township, I did not make out, or send any notice to any of the board to attend at a meeting that day. There were no written notices given to attend the meeting of the board that day. Well, I was simply come out after. They got me and said there was a meeting. Lloyd Vest came after me. I do not know whether anybody went after Mr. Hall. * * * I did not have any idea how the township board come to hold a meeting on that day. I was simply sent for. I did afterwards certify that the bond passed upon by the persons assuming to act as township board that day was duly approved by the board. I did that by voting on it. I talked with the supervisor about filling it out."

The following is taken from the testimony of Mr. Turner:

"And at this meeting on the 28th with Messrs. Brown, Hall, Kaiser, and Kopperi present, they either rejected this bond, or failed to approve of it; you knew that, on the 28th it was approved. I beg your pardon, it was the 29th; they didn't approve it on the 28th. I learned that they didn't approve my bond directly after the meeting adjourned; they told me. It was a matter of considerable moment to me. I simply asked them why, and they said they didn't know. I asked the supervisor why they turned my bond down, and he said he didn't know. I didn't talk to any of the others. I understood from the supervisor that Mr. Hall was against it.

"I knew that if I was going to get a liquor license that I had to get it that day or not at all. I did not immediately get busy among the members of the board to get another meeting. I got busy to get counsel. Counsel was to get a new application and present the new application before the board. * * * They didn't approve it on the 28th, and then I knew that

it was up to me to get the bond approved, and then I had a conversation with Mr. Brown, the supervisor, and he couldn't understand why some of the board were against it. I simply asked Mr. Brown why they turned the bond down. Mr. Kopperi was out on the farm. I did not talk about it to Kaiser—he seemed to be against accepting my bond—so I had it arranged with Mr. Brown, the supervisor, that he was to call another meeting of the board, and get the bond approved so I could get a license. I did not talk with any of the other members of the board. * * * All the conversation I had about the bond was that with the supervisor before the meeting. I had not talked with him about calling in another justice. I had no conversation about that. I knew, however, when I was at this meeting and when this bond was brought up, that Mr. Peterson was assuming to act as a member of the board. I did not know whether or not Mr. Hall was notified. I knew all the time that it was Hall and Kaiser that were objecting."

We quote from the brief of appellant's counsel:

"When the State of Michigan or its attorney general or prosecuting attorney comes into this court as a suitor, it or he, whether asserting sovereign prerogative or seeking pecuniary relief, is bound by all the rules of equity with a few exceptions, none of which is applicable to the present controversy. * * * Equity will, in the proceeding where the plaintiff asks its intercession, regard as done that which ought to have been done, and will treat the bond in question as approved on April 28, 1916. The maxim, 'He that hath committed iniquity shall not have equity,' applies with singular force to the conduct of the complainant in this case. 'A court of equity will leave this complainant, the people of the village, * * * in the bed they have deliberately made, and to such defense as a court of law may find they are entitled to,' is the language of Justice GRANT in *Common Council of Cedar Springs* v. *Schlich*, 81 Mich. 411 (45 N. W. 995, 8 L. R. A. 851). * * * An innocent third party need not look beyond the face of the records or the declaration in documents by officials authorized to

issue the same. All presumptions are in favor of the validity of the proceedings."

The record does not disclose why the bond was rejected on April 28th. It does disclose that after it was rejected the defendant sought the advice of counsel; that he knew the relator Mr. Hall was opposed to approving his bond; that he knew he was not at the meeting of April 29th; and that his place was taken by a junior justice. We think it can hardly be said he is an innocent third party who will be protected by the face of the record.

The pivotal question involved was so recently before the court in *George* v. *Travis,* 185 Mich. 597 (152 N. W. 207, L. R. A. 1915E, 408), that we shall content ourselves by referring to the opinion in that case.

The decree is affirmed, with costs.

KUHN, C. J., and STONE, BIRD, and FELLOWS, JJ., concurred with MOORE, J.

OSTRANDER, J. (*dissenting*). It is assumed that, except as costs may be awarded, the decision of this cause will be of no importance to the parties thereto. Defendant's license to do business covered a period which expired last May. As, however, a decree was rendered in the court below in December, 1916 (the date not appearing), and it is contended that a different decree ought to have been given, and, as I am unable to agree with Mr. Justice MOORE as to the proper disposition of the contentions made, I state my reasons for disagreement.

The contention of the plaintiff rested and rests upon the proposition that defendant had no right to conduct his saloon from May 1, 1916, because his bond was approved at an informal meeting of the township board, which one of the senior justices of the peace did not attend, and of which meeting he had no notice. It is to be inferred from the record before us that the

township board was bound in law to approve the bond which defendant presented, and that refusal to do so would have been a breach of official duty. That senior justice of the peace who was absent from the township board meeting held April 29, 1916, at which time the bond was approved, and who instituted this proceeding, testified upon cross-examination as follows:

"When I voted not to approve of that bond on the 28th day of April I didn't know that I was violating my oath of office in so voting. We had been directed by this circuit court for the county of Ontonagon a year ago to reconvene and approve of the bond. I knew that at this meeting of the 28th of April a like bond was being submitted for approval. And yet I voted no. I thought we had the authority. And I am a party in this action. I started it of my own will and my own desire, with the consent of the other justice. The other members of the board are not authorizing me to do this. I believe it is against the wish and will of the other members of the board. I know that Mr. Turner took his bond after it had been approved, and delivered it to the county treasurer. I know that he paid $500 to the county treasurer, and I knew that the township board received that $500. As a member of the township board I never protested against the township receiving that $500. I even acknowledged receipt of the $500, and knew that the $500 went into the town treasury, and was then by the township board spent in the interests of the town."

The prosecuting attorney, who is the plaintiff, says that two questions are involved: (1) Was the action approving of the bond void so that the license issued was illegal, and (2) is a bill for injunction against conducting the saloon and for cancellation of the license a proper remedy? In argument, after referring to *Lewick* v. *Glazier*, 116 Mich. 493 (74 N. W. 717), and *Auditor General* v. *Sparrow*, 116 Mich. 574 (74 N. W. 881), he says:

"An examination of these decisions, and of other decisions to the same effect, shows that the earlier decisions have not been modified, but that this court has held that technical nicety is not required in records of township boards, and that if the contrary does not appear, it will be presumed that the meetings were regularly called. In the present case, it was proved on behalf of the plaintiff that the meeting was in fact not regularly called or held, and was not a legal meeting, and while, under these later decisions, this court, from an inspection of the records alone, might presume the meeting to be a legal one, no such presumption can exist when, as in this case, it is conclusively proved that the meeting at which it was undertaken to approve the Turner bond was not a legal meeting. While there is no evidence in the case that Mr. Turner was guilty of actual, intentional fraud, it nevertheless does appear that he was present at the meeting; that he knew that Messrs. Brown, the supervisor, Kopperi, the clerk, and Hall and Kaiser, justices of the peace, constituted the township board of that township, and knew that they were not all present, and had sufficient knowledge to give him notice that this was not a legal meeting of the board. It follows, therefore, that the bond pursuant to which Turner's license was issued has never been legally approved, and that the county treasurer was not authorized to issue a license to him to engage in the retail liquor business."

The jurisdiction of equity in cases like this is confined to compelling the surrender and cancellation of instruments which, illegally and fraudulently obtained, nevertheless are evidence of apparent right to carry on the business. *George* v. *Travis,* 185 Mich. 597 (152 N. W. 207, L. R. A. 1915E, 408). Defendant relied and relies upon favorable action of a public official body in approving his bond. The county treasurer relied upon it in issuing the license. The favorable action of this official body, in this behalf, the defendant might have compelled. It was in fact irregular, and, because irregular, illegal, action. Good conscience does not demand that the apparent evidence which the

township board was bound to furnish to defendant, and which it did furnish him, should be, because of the fault of the board, surrendered and canceled.

The decree should be reversed, and one entered dismissing the bill.

STEERE and BROOKE, JJ., concurred with OSTRANDER, J.