YOUNG, J.
(dissenting). This case requires this Court to interpret the relevant licensing provisions of the *222 amended Insurance Code, which preclude persons who have been convicted of a felony from receiving a resident insurance producer license, in the context of the entire Insurance Code. In this case, the Office of Financial and Insurance Services (OFIS)[1] failed to discharge its statutory duties and enforce relevant statutory mandates when it granted plaintiff an insurance license in 2004, despite plaintiffs previous conviction of a felony. The decision by OFIS to seek revocation of that license, while unfortunate for the improperly licensed plaintiff, is nonetheless proper because the original licensure was invalid. Governmental administrators, like those in OFIS, cannot act in derogation or contravention of their statutory authority when issuing licenses. Because the majority justices fail to render meaning to all relevant provisions of the Insurance Code by holding contrarily, and thereby exercise judicial power to avoid the application of a valid statute, I respectfully dissent.
I. ANALYSIS
A. STATUTORY ANALYSIS
This case requires that we interpret the Insurance Code — specifically MCL 500.1205 and MCL 500.1239 — as it existed in 2004. When “interpreting statutory language, this Court’s primary goal is to give effect to the Legislature’s intent. If the Legislature has clearly expressed its intent in the language of a statute, that statute must be enforced as written, free of any ‘contrary judicial gloss.’ ”[2]
*223 MCL 500.1205 governs the licensing of insurance agents who reside in Michigan; in 2004, MCL 500.1205(1) provided, in relevant part:
An application for a resident insurer [sic] producer license shall not he approved unless the commissioner finds that the individual meets all of the following:
(b) Has not committed any act that is a ground for denial, suspension, or revocation under [MCL 500.1239].[3]
In 2004, MCL 500.1239 provided, in relevant part:
(1) In addition to any other powers under this act, the commissioner may place on probation, suspend, revoke, or refuse to issue an insurance producer’s license or may levy a civil fine under [MCL 500.1244] or any combination of actions for any 1 or more of the following causes:
(f) Having been convicted of a felony.[4]
At its most basic level, this case turns on the answer to a single question: in 2004, did these provisions of the Insurance Code prohibit OFIS from issuing a resident insurance producer license to an applicant who had been convicted of a felony? Defendant OFIS argues that these provisions required OFIS to deny plaintiff a license because he had been convicted of a felony. Plaintiff argues, however, that these provisions, when read together, did not constitute a statutory mandate that required OFIS to deny plaintiff a license, and therefore OFIS is equitably estopped from revoking it now. Thus, the primary dispute here is whether OFIS *224 was mandated by statute to reject plaintiffs application in 2004, or whether OFIS had discretion to approve or reject the application at that time. If defendants’ statutory interpretation is correct and the Insurance Code mandated that OFIS not grant licenses to former felons, then there exists a clear statutory mandate that neither equity nor this Court can avoid. In that situation, OFIS must be allowed to retract the license that should not have been issued in the first place. For the reasons set forth below, I agree with defendants.
If MCL 500.1205(l)(b) is read in isolation, there is no question that OFIS cannot issue a license to a convicted felon. In effect, it provides that an application for a resident insurance producer license shall not be approved unless the commissioner finds that the individual has not committed a felony. Here, OFIS approved a license without making the requisite finding that plaintiff had not committed a felony. Indeed, the opposite is true: OFIS knew that plaintiff had in fact committed a felony, as plaintiff honestly disclosed and as OFIS recognized in the letter it sent to plaintiff when informing plaintiff that he was being granted a “waiver.”
However, MCL 500.1205(l)(b) cannot be read in isolation, but must be interpreted in light of the language of MCL 500.1239(l)(f), to which it makes direct reference. By itself, MCL 500.1239(1)(f) permits the OFIS commissioner to refuse to issue a license when an applicant has a felony conviction, but it does not forbid OFIS to grant the license as MCL 500.1205 does.
The OFIS commissioner resolved the apparent conflict between MCL 500.1205 (no discretion) and MCL 500.1239 (some discretion) in favor of applying the “no discretion” standard of MCL 500.1205 because it is “more particular” and “particularly con *225 cerned with establishing standards for licensure.”[5] The commissioner’s Mazur decision attempted to establish harmony between the two statutes by concluding that OFIS must exercise the discretion conferred by MCL 500.1239(1) in light of the standards conferred by MCL 500.1205(l)(b).
I would hold that OFIS correctly resolved the apparent conflict between MCL 500.1205 and MCL 500.1239 in the way that most closely adheres to the Legislature’s stated intent.[6] In coming to this conclusion, it is necessary to consider the entire statutory structure of the licensing provisions in the Insurance Code. As noted, MCL 500.1205 governs the licensing of resident insurance producers for individuals who reside in Michigan. The Insurance Code also allows the licensing of nonresident insurance producers who are licensed in another state but transact business in Michigan, which is sepa *226 rately governed by MCL 500.1206a.[7] MCL 500.1239 applies both to resident and nonresident insurance producers.
The Legislature has chosen to apply differing standards to resident and nonresident insurance producers. While MCL 500.1205 provides that a resident applicant “shall not” be licensed if he has committed an act described in MCL 500.1239, MCL 500.1206a(1) contrarily provides that “[u]nless denied licensure under [MCL 500.1239], a nonresident person shall receive a nonresident insurance producer license . . . .”[8] Thus, the Legislature specifically used discretionary language in MCL 500.1239 to permit the commissioner to determine, in his discretion, whether to “refuse to issue an insurance producer’s license” to a nonresident applicant who has been convicted of a felony. At the same time, the Legislature prohibited such issuance to resident applicants by using mandatory language in MCL 500.1205.
This interpretation avoids rendering any language nugatory or mere surplusage.[9] In particular, it accords meaning both to MCL 500.1205 and MCL 500.1239. The primary purpose of MCL 500.1239 is to provide grounds for probation, suspension, revocation, or refusal to issue a license. Thus, under this interpretation, every word in MCL 500.1239 has meaning because its provisions cover when OFIS may take disciplinary action against a licensee and its provisions covering *227 initial licensing clearly refer to nonresident applicants. MCL 500.1205, on the other hand, covers solely the initial licensing of resident agents, and it merely incorporates by reference the requirements of MCL 500.1239, not its discretionary standard. By according meaning to each of these statutory provisions, it becomes clear that the Legislature wished to provide no discretion to the commissioner when licensing individuals from Michigan, but allow the commissioner to retain some discretion in taking disciplinary action or in licensing a nonresident applicant. Therefore, the statutory scheme removes the discretion explicitly contemplated in MCL 500.1239 in the initial licensing phase for resident applicants, but does not render it nugatory for all purposes.
Further, this construction is in accord with the rule of statutory construction providing that where “ ‘a statute contains a general provision and a specific provision, the specific provision controls.’ ”[10] When read together, the mandatory standard of MCL 500.1205 controls over the discretionary standard of MCL 500.1239 because it is more specific: MCL 500.1205 exclusively addresses the issuance of resident insurance producer licenses, whereas MCL 500.1239 includes lan *228 guage regarding probation, suspension, issuance of civil fines, revocation of insurance licenses, and issuance of nonresident licenses. Because it relates to discipline generally, MCL 500.1239 thus has a broader application that cannot displace the standard of MCL 500.1205, which is specific to licensing resident insurance producers. Similarly, this specific directive controls over the general provision in MCL 500.205 that OFIS must act within the reasonable exercise of its discretion when making decisions or reaching conclusions.[11]
The lead and concurring opinions fail to consider the entire structure of the Insurance Code when coming to their respective conclusions that the code allows a discretionary standard to be applied to nonresident applicants, and that the code is ambiguous. As the above analysis demonstrates, and contrary to the argument made by the concurring justice, these statutory provisions are reconcilable and thus certainly not ambiguous.[12] “Conflicting provisions of a statute must be read together to produce an harmonious whole and to reconcile any inconsistencies wherever possible.”[13] A statute is not ambiguous simply because it is suscep *229 tibie to more than one interpretation.[14] Such an inexact standard would simply leave too much legislative work product open to reinterpretation or unwarranted intervention by the judiciary, as this case illustrates. Under this opinion’s analysis, every provision of the code— including both the mandatory standard of MCL 500.1205 and the discretionary standard of MCL 500.1239 — is accorded its plain meaning, but only when done with the understanding that there are two types of insurance producers licensed in Michigan and the code treats them differently. The lead and concurring opinions simply do not account for this.
Moreover, plaintiffs contrary attempt to reconcile these statutory provisions is not convincing. Plaintiff chiefly argues that OFIS has the discretion to determine whether grounds exist to deny a license and thus may “find” that an applicant has not committed a felony for the purposes of licensing. However, the relevant factual inquiry that OFIS must undertake does not leave room for ambiguity: either an applicant has been convicted of a felony or he has not. If the applicant has been convicted of a felony, the commissioner can hardly be said to have the discretionary power to “find” that he has not been convicted of a felony. Indeed, a decision so out of accord with reality would clearly constitute obvious error requiring reversal.
Aside from failing to consider the entire structure and separate provisions of the Insurance Code, the lead opinion’s statutory analysis does not otherwise withstand scrutiny. The lead opinion generally concludes that OFIS initially had broad discretion to render its licensing decision, but that the 2002 amendments to the Insurance Code replaced the “nebulous environment” *230 in which OFIS made its decisions with the current “framework” in which OFIS now makes its decisions.[15] This argument appears to be little more than judicial gloss masking as interpretation in derogation of this Court’s stated duty to determine the Legislature’s intent.[16]
The lead opinion fails to explain how the relevant statutory provisions are “read together,”[17] and why, when the various statutory provisions are read together, they should not be construed as having required OFIS to deny plaintiffs license.[18] Nor does the lead opinion employ or discuss any of the traditional canons of construction that guide this Court’s interpretation of statutes. Instead, the majority justices simply and summarily reject defendants’ argument, but support this conclusion with little else than their own ipse dixit.
Perhaps more egregious, the lead opinion’s ultimate interpretation fails to accord meaning to all the words of the statute. In particular, the statement in MCL 500.1205 that the insurance license “shall not be approved” if the applicant has been convicted of a felony is rendered functionally without meaning by the lead *231 opinion’s interpretation.[19] Nor do the majority justices who join either the lead or concurring opinions accord any significance to the fact that the code treats resident and nonresident applicants under separate standards, or address why this fact does not resolve the apparent conflict in the statutory provisions as discussed above. Moreover, the admonition of MCL 500.205 that OFIS must not abuse its discretion when making decisions can hardly be said to allow OFIS to make whatever determination it feels is reasonable under the circumstances given that the Legislature has instructed in MCL 500.1205(1) that OFIS “shall not” take certain action. Nevertheless, the majority justices read these general statements in such a way as to displace the more specific statutory provisions.
B. ANALYSIS OF THIS COURT’S PRIOR CASES
This Court has long held in cases involving similar licensing decisions that revocation procedures must be invoked if a license was granted in excess of an agency’s statutory authority. As far back as the early twentieth century, this Court decided that a facially valid license that was nevertheless issued in violation of a statute should be revoked.[20] In Gamble v Liquor Control Comm, this Court reaffirmed that principle, stating that the proper question before a court in such cases is to determine whether the license was issued in violation of the relevant statute.[21] Having determined that it was, the Court held that the license should have been revoked.[22] In Elliott v Liquor Control Comm, having *232 determined that granting the plaintiff a license in that case was “forbidden,” the commission was “required to revoke, rescind and cancel the license heretofore issued ... .”[23] Similarly, the Court applied Elliott in Big Bear Markets of Mich, Inc v Mich Liquor Control Comm, holding that the plaintiffs license “was improperly granted and was, in consequence, subject to revocation” notwithstanding a showing that the party that the statute was designed to protect was willing to waive its rights under the statute.[24] In Kassab v Acho, the Court of Appeals more recently reaffirmed these principles, stating:
[The defendant-licensee] argues that the commission has the authority to continue the license on the ground of manifest injustice. We disagree. As an agency, the commission has no inherent powers and, therefore, any authority *233 must come from the Legislature. The commission’s plenary power to regulate liquor traffic is subject to statutory restraints. The commission’s rules and regulations, promulgated pursuant to the Liquor Control Act, MCL 436.7; MSA 18.977, prohibit the commission from issuing an SDD license in violation of the one-half[-]mile rule. None of the exceptions to the rule applied and, thus, the commission had no discretion to waive the rule. Where a liquor license is issued in violation of a statute, it must be revoked. Manifest injustice is not a means by which the commission may avoid legislative mandate as well as its own regulations.[25]
In short, these cases have continually reaffirmed the principle that a governmental entity cannot act in contravention of its statutory powers. When an agency does not act in accordance with its limited statutory powers, its decision should not stand, even if that action will result in a harsh outcome.
This principle is particularly important because of the structure of our government, which provides for a separation of powers among the three branches. This system requires that the Legislature and Governor make policy choices and that the courts enforce those political decisions as written. In this case, because the statute as written at the time of plaintiffs licensing in 2004 mandated that OFIS decline to license anyone who had been convicted of a felony, OFIS should not have licensed plaintiff, and this Court cannot use equity to displace the statutory mandate or otherwise validate that improper decision.
This Court has reaffirmed this basic principle underlying the separation of powers throughout its history. In Stokes v Millen Roofing Co, this Court held the trial court’s analysis invalid because “equity is invoked to *234 avoid application of a statute. Courts must be careful not to usurp the Legislative role under the guise of equity because a statutory penalty is excessively punitive.”[26] As this Court elaborated in Bilt-More Homes, Inc v French, and readopted in Stokes, it is not a court’s place
to begin the process of attrition whereby, in appealing cases, the statutory bite is made more gentle, until eventually the statute is made practically innocuous and the teeth of the strong legislative policy effectively pulled. If cases of such strong equities eventually arise that the statute does more harm than good the legislature may amend it. .. [27]
Similarly, in Martin v Secretary of State, this Court again reaffirmed the guiding principle that courts cannot use equity to displace a statutory requirement designed by the Legislature.[28] There, the plaintiff was a candidate for elective office who had been misled by the Secretary of State regarding the number of signatures needed to qualify to be placed on the ballot. As a consequence, he failed to collect enough signatures by the statutory deadline and the Secretary of State refused to place his name on the ballot. We explained that courts could not use equity to compel the government to perform an act that the law clearly forbid, even when the state itself was the root cause of the problem — as is the case here.[29] Moreover, our decision affirmed that an *235 administrative agency is not permitted to expand its own authority beyond what the Legislature granted. As Justice Markman explained,
it is not ‘manifestly unjust’ for this Court to conclude that the plain words of a law enacted by the Legislature cannot be modified by a clerk in the Secretary of State’s office (or indeed by the Secretary of State herself).. .. There cannot be as many laws as there are public servants who dispense guidance or advice on the meaning of the law.” [30]
It would indeed be a strange system of government if every administrator or bureaucrat had the power to make decisions in derogation of the limited statutory powers provided by the Legislature. Yet the lead and concurring justices would essentially give every governmental bureaucrat the extraordinary power to countermand what the Legislature has proscribed. It is an abrogation of the legitimate exercise of judicial power to allow agency decisions to be the ultimate authority in licensing when those decisions are made in a manner contrary to a legislative mandate.
In contravention of these principles, both plaintiff and the concurring justice cite approvingly Pittsfield Twp v Malcolm for the proposition that there are cases that present “exceptional circumstances” whereby courts may employ equity to avoid unjust results.[31] Malcolm is indicative of the occasional discord in this Court’s caselaw. In particular, it characterizes the unevenness by which this Court has occasionally treated the interplay between positive law and equity over the course of its history. However, I do not believe that the holding of Malcolm can overcome the general prohibition against applying equity to circumvent a statutory mandate, nor can it overcome the more applicable line *236 of cases from this Court requiring improperly issued licenses to be revoked. Additionally, Malcolm is largely distinguishable on its facts because it involved a local zoning ordinance — under which discretionary exceptions (zoning variances) are often sought and obtained — and did not involve a legislatively enacted mandate. Similarly, the plaintiff’s and the Court of Appeals’ reliance on Kern v City of Flint,[32] is inapposite, even if it remains good law, because equity was used there to prevent the enforcement of terms in a contract. The Court in Kern did not use equity to overcome a statutory mandate, which implicates the Legislature’s constitutional authority to make policy for the citizens of this state.
On the basis of my statutory construction, which I believe properly accords meaning to all the Legislature’s chosen words in the relevant statutes and considers the entire structure of the Insurance Code, I would hold that the Court of Appeals erred by failing to analyze the relevant statutory provisions as they existed in 2004 and then invoking equity to avoid the result of that analysis.
II. RESPONSE TO THE LEAD OPINION’S ADDITIONAL ARGUMENTS
The lead opinion asks and answers three questions, only one of which is actually necessary for the disposition of this case: did the Insurance Code expressly prohibit OFIS from issuing a license to plaintiff in 2004? As discussed earlier, the lead opinion refuses to engage in any meaningful statutory construction in answering this question and thereby draws a conclusion that fails to give effect to all the words of the relevant statute. The lead opinion then engages in a discussion *237 of two questions — whether OFIS is required to revoke plaintiffs license and whether OFIS may revoke plaintiffs license under the statute as currently written— that no party or justice disputes. In short, the lead opinion’s cursory attempt at statutory interpretation and other analysis theoretically supporting its disposition in this case does not scour.
The lead opinion asks “whether the commissioner is now required by statute to affirmatively revoke plaintiffs license on the basis of the same prior felony.”[33] As far as I can tell, no party or justice disputes that the answer to this question is quite obviously “no,” nor is the answer to this question relevant to a disposition here. OFIS admits that it does not seek to revoke plaintiffs license on the basis of any post-licensure conduct by plaintiff, nor does OFIS argue that the statute, as it is currently written, requires revocation. Instead, OFIS argues that because it was illegal to license plaintiff in the first place under the statute as it existed in 2004, the issuance of the license was outside OFIS’s administrative authority and the license therefore must be revoked.
Additionally, the lead opinion asks “whether the commissioner is now permitted to revoke plaintiffs license on the basis of the same prior felony.” It then curiously and circularly answers this question by stating that “the commissioner may not revoke a license on the basis of the erroneous belief that he must do so when, in fact, he has discretion.”[34]
Again, the question posed and answer provided by the lead opinion is irrelevant to the actual argument that OFIS makes as authority for its ability to revoke *238 plaintiffs license in the instant case. As OFIS argued in its brief and as OFIS’s attorney readily noted at oral argument, the OFIS commissioner in this case is not exercising his discretionary authority under MCL 500.1239. Instead, counsel for OFIS urged at oral argument that the commissioner was
being guided by the mandatory language of [MCL 500.] 1205 and further guided by this Court’s decisions in similar licensing cases where this Court has clearly said when a license is granted in excess of the statutory authority or in violation of it, it’s not discretionary and the agency is bound to revoke it.
[While] procedurally this is a revocation proceeding,... the revocation proceeding is touched off by the grant of an improper license. So it’s not — this proceeding is not governed by the normal discretionary standard for revocation because the license here was never validly issued by the agency.
Indeed, counsel for OFIS further admitted that if this were a typical revocation proceeding governed by the discretionary standard employed in such proceedings, then the commissioner would have “no grounds to revoke Mr. King’s license . . . .” However, as OFIS argues and the above analysis demonstrates, that does not dispose of the true issue in this case: whether the statute, as it was written in 2004, mandated that plaintiff not be given a license, thus making his subsequent licensure invalid. And as previously discussed, this Court’s caselaw has continually reaffirmed that even though statutory revocation provisions may be written as discretionary, those revocation procedures must be invoked if the original license was granted in excess of an agency’s authority.
*239 By invoking a premise that OFIS readily concedes and by ignoring the argument OFIS actually proffers in defense of its action here, the author of the lead opinion renders an opinion that is largely unresponsive to the issues raised by this appeal. This error is further complicated by the fact that the lead opinion declines to address whether equity may otherwise be invoked to save plaintiffs license. Indeed, the lead opinion makes “no pronouncement about whether equity applies here or what effect it might have.”[35] It does so notwithstanding the fact that the linchpin of plaintiffs entire argument is that OFIS is equitably estopped from revoking his license because of plaintiffs truthful disclosure of his felony and OFIS’s fiill review and waiver of the same. Similarly, equity was also the only basis on which the lower courts rendered their decisions. However, as the above statutory analysis demonstrates, and contrary to the concurring justice’s position, equity cannot be properly invoked in this case because the statute mandates a particular outcome. The lead opinion avoids this established principle by disclaiming that it is using equity even though its statutory analysis fails to establish a sufficient and alternative basis to do so.
Finally, the lead opinion also fails to distinguish (or even discuss) any of the relevant caselaw holding that a license issued in violation of a statute should be revoked. Nor do the justices joining the lead and concurring opinions appear willing to recognize the implications of their decision today, and I question whether those justices would draw the same conclusions if plaintiff here were less sympathetic. Consider, for example, a convicted child molester who received a license to open a daycare center, contrary to a clear statutory *240 mandate preventing such licensure.[36] Would the majority justices here prevent the government from revoking the invalid license? Similarly, consider a dangerous felon who was inappropriately and illegally provided a license to carry a firearm, contrary to the clear statutory mandate preventing such licensure[37] and the fact that possession of a firearm by such a person is a separate crime punishable by up to five years in prison.[38] Would the majority justices here allow the felon to retain his firearm license? In these scenarios, would the concurring justices in particular still unequivocally “hold that a governmental licensing agency is estopped from revoking a license solely on the basis of the same fully disclosed and accurate facts for which it had previously granted an express waiver if the licensee has reasonably relied to his detriment on the issued license”?[39] Indeed, such a rule has the potential to establish an untenable state of affairs in which every bureaucrat would become a king unto himself whose decisions — no matter how contrary to established law — are insulated from challenge.
HI. CONCLUSION
The proper interpretation of the relevant statutory provisions as articulated in this dissent would admittedly produce a result in this case that is harsh for this plaintiff who properly disclosed a condition that made him ineligible for the license he was improvidently granted. While this result is unfortunate for this particular plaintiff, it is also what the law requires. The inflexibility purposely built into this statute by the Legislature and approved by the Governor is the result *241 of policy determinations made by those political branches of government.[40] Save those statutes that are an affront to the constitution, no court can employ its limited judicial power to overeóme a valid statutory mandate. Nor can the rule of law, as prescribed by MCL 500.1205(l)(b) when read in the context of MCL 500.1239(1) and MCL 500.1206a, be displaced by the actions of OFIS administrators. An administrative agency may exercise only the powers provided to it and must act within the parameters conferred upon it by statutory law.[41] Action in excess of these powers or outside these parameters in situations in which the Legislature has mandated a specific outcome is not valid. Because the majority justices here effectively sanction such impermissible conduct, I dissent.
Corrigan and Markman, JJ., concurred with Young, J.

 The Office of Financial and Insurance Services has since been reorganized and is now part of the Official of Financial and Insurance Regulation, one of the named defendants in this case.

 Dep’t of Agriculture v Appletree Mktg, LLC, 485 Mich 1, 8; 779 NW2d 237 (2010), quoting Morales v Auto-Owners Ins Co (After Remand), 469 Mich 487, 490; 672 NW2d 849 (2003) (citation omitted).

3 Italics and bold added.

4 Emphasis added.

 Mazur v Office of Fin & Ins Servs, Case No. 03-384-L, Docket No. 2003-1515 (May 14, 2004), p 3.

 Mazur is a nonbinding administrative decision. Nevertheless, when interpreting a statute that a governmental agency has the power to interpret and duty to enforce, this Court accords
“respectful consideration” for the agency’s statutory interpretation, and will provide “cogent reasons” for overruling an agency’s interpretation. Furthermore, when the law is “doubtful or obscure,” the agency’s interpretation is an aid for discerning the Legislature’s intent. However, the agency’s interpretation is not binding on the courts, and it cannot conflict with the Legislature’s intent as expressed in the language of the statute at issue. [In re Complaint of Rovas Against SBC Mich, 482 Mich 90, 103; 754 NW2d 259 (2008), citing and quoting Boyer-Campbell Co v Fry, 271 Mich 282; 260 NW 165 (1935).]
Contrary to the standard cited in the lead opinion, see ante at 214, Rovas and Boyer-Campbell remain good law and therefore articulate the proper standard by which this Court reviews an administrative agency’s interpretation of a statute. See generally Rovas, 482 Mich at 104-109.

 Individuals who receive nonresident insurance producer licenses are subject to separate requirements to obtain and maintain a license that are different from applicants from Michigan who receive resident insurance producer licenses. See, generally, MCL 500.1204e and MCL 500.1206a.

 Emphasis added.

 See Wickens v Oakwood Healthcare Sys, 465 Mich 53, 60; 631 NW2d 686 (2001) (observing that this Court must “avoid a construction that would render any part of the statute surplusage or nugatory”).

 Jones v Enertel, Inc, 467 Mich 266, 270; 650 NW2d 334 (2002), quoting Gebhardt v O’Rourke, 444 Mich 535, 542-543; 510 NW2d 900 (1994); see also People v Ellis, 224 Mich App 752, 756; 569 NW2d 917 (1997) (“The specific statute is treated as an exception to the general one.”). This Court has further explained that “[i]n order to determine which provision is truly more specific and, hence, controlling, we consider which provision applies to the more narrow realm of circumstances, and which to the more broad realm.” Miller v Allstate Ins Co, 481 Mich 601, 613; 751 NW2d 463 (2008).
Of note, the applicable versions of both MCL 500.1205 and MCL 500.1239 became effective March 1, 2002, and therefore the rule of statutory interpretation that the latter enacted statute prevails in the face of a statutory conflict is inapposite in this case.

 MCL 500.205 generally directs that “[o]rders, decisions, findings, rulings, determinations, opinions, actions, and inactions of the commissioner in this act shall be made or reached in the reasonable exercise of discretion.” For the reasons stated in the text, I reject the lead opinion’s representation of MCL 500.205 as trumping the limitations imposed by MCL 500.1205.

 The concurring justice merely notes the conflict in wording, but provides absolutely no attempt at statutory interpretation or reconciliation of the separate statutory provisions before declaring that the statutes “irreconcilably conflict!]” with each other. See ante at 218 (citation and quotation marks omitted). Nor does the concurring justice accord any significance to the fact that the code treats resident and nonresident applicants under separate standards, instead merely finding this Legislative choice “absurd.”

 World Book, Inc v Dep’t of Treasury, 459 Mich 403, 416; 590 NW2d 293 (1999).

 See, e.g., Lansing Mayor v Pub Serv Comm, 470 Mich 154, 166; 680 NW2d 840 (2004).

 Ante at 214.

 See Wayne Co v Hathcock, 471 Mich 445, 456; 684 NW2d 765 (2004) (“In interpreting this statutory language, this Court’s primary goal is to give effect to the Legislature’s intent. If the Legislature has clearly expressed its intent in the language of a statute, that statute must be enforced as written, free of any ‘contrary judicial gloss.’ ”) (citation omitted); In re Certified Question from the United States Court of Appeals for the Sixth Circuit, 468 Mich 109, 119; 659 NW2d 597 (2003) (“The imposition of a contrary judicial gloss is inappropriate where the Legislature has clearly expressed its intentions in the words of the statute.”).

 Ante at 214.

 The lead opinion similarly determines that the Mazur decision “was incorrect” with, literally, no explanation why. See ante at 215.

 Emphasis added.

 See George v Travis, 185 Mich 597; 152 NW 207 (1915).

 323 Mich 576, 579; 36 NW2d 297 (1949).

 Id. at 580. This case, like others at the time, held that a licensee has no vested or property interest in a license and that due process protec *232 tions are not necessary to revoke a license. As defendant correctly note, courts have since held that a licensee has a vested property interest in the license, which entitles the holder to due process protections. See, e.g., Bundo v Walled Lake, 395 Mich 679; 238 NW2d 154 (1976). This latter change in the law does not render the earlier decisions irrelevant. Specifically, recognizing that licenses provide an interest to the licensee and that a licensee is entitled to due process protections before revocation does not affect the analysis regarding the revocation of invalid licenses, although revocations must now comport with due process. Moreover, courts have held only that a person is entitled to procedural due process in these situations. See generally Bundo. Thus, a licensee is entitled to timely written notice detailing the reasons for the proposed administrative action, an effective opportunity to defend and present supportive evidence, and a statement of findings. Bundo, 395 Mich at 696-697. This “rudimentary” due process balances the interests of a person who has invested in a license that is necessary for his livelihood with the community’s interest in proper regulation. Id. at 696; see also Bois Blanc Island Twp v Natural Resources Comm, 158 Mich App 239; 404 NW2d 719 (1987). Therefore, improperly issued licenses — including the one issued to plaintiff here — -may be revoked as long as the licensee is accorded procedural due process.

 339 Mich 78, 82-83; 62 NW2d 594 (1954).

 345 Mich 569, 576; 77 NW2d 135 (1956).

26 150 Mich App 104, 112-113; 388 NW2d 263 (1986) (citations omitted).

 Stokes v Mitten Roofing Co, 466 Mich 660, 671-672; 649 NW2d 371 (2002).

27 Bilt-More Homes, Inc v French, 373 Mich 693, 699; 130 NW2d 907 (1964) (quotation marks and citation omitted), quoted and reaffirmed in Stokes, 466 Mich at 672.

 482 Mich 956 (2008), adopting the opinion in relevant part of Judge O’Connell, in Martin v Secretary of State, 280 Mich App 417, 430; 760 NW2d 726 (2008) (O’Connell, EJ., dissenting).

 See Martin, 482 Mich at 956-957 (Young, J., concurring).

30 Id. at 957 (Markman, J., concurring).

 375 Mich 135, 144-148; 134 NW2d 166 (1965).

 125 Mich App 24; 335 NW2d 708 (1983).

 Ante at 211.

 Ante at 216.

 Ante at 216-217.

 See MCL 722.115g(3).

 See MCL 28.425b; MCL 28.425b(7)(f) and (11).

 See MCL 750.224Í.

 Ante at 217.

 The purposefulness of this inflexibility and the bright-line nature of this rule was reaffirmed when the Legislature amended MCL 500.1239(1) in 2009 in order to remove any dispute that OFIS must deny convicted felons a license to be a resident insurance producer. MCL 500.1239 now provides:
(1) In addition to any other powers under this act, the commissioner may place on probation, suspend, or revoke an insurance producer’s license or may levy a civil fine under section 1244 or any combination of actions, and the commissioner shall refuse to issue a license under section 1205 or 1206a, for any 1 or more of the following causes:
(f) Having been convicted of a felony. [Emphasis added.]
This amended language unanimously passed both chambers of the Michigan Legislature, and was signed into law by Governor Granholm on January 5, 2009. See 2008 PA 423.

 See, e.g., Union Carbide Corp v Pub Serv Comm, 431 Mich 135, 146; 428 NW2d 322 (1988); Mason Co Civic Research Council v Mason Co, 343 Mich 313, 326-327; 72 NW2d 292 (1955); Taylor v Pub Utilities Comm, 217 Mich 400, 402-403; 186 NW 485 (1922).